UNITED STATES of America, Plaintiff-Appellee,

v.

93 COURT CORPORATION, Anthony M. Meyerstein, Inc., Anthony M. Meyerstein and Theodore B. Meyerstein, Defendants-Appellants,

and

The People of the State of New York, etc., Defendants.

No. 509, Docket 29699.

United States Court of Appeals
Second Circuit.

Argued May 19, 1965.

Decided Aug. 31, 1965.

Morton Hollander, Atty., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Joseph P. Hoey, U. S. Atty., David L. Rose, Florence Wagman Roisman, Attys., Dept. of Justice, for plaintiff-appellee.

Albert Foreman, Carl Levine, Morgulas & Foreman, New York City, for defendants-appellants.

Before WATERMAN, MARSHALL* and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

█ The government commenced an action to foreclose a mortgage that secured a note given to the Reconstruction Finance Corporation (hereinafter RFC) and moved for the appointment of a receiver. Defendants cross-moved to dismiss on the ground that the government's action was barred by the running of the Statute of Limitations. In a single order the court below appointed a receiver and denied defendants' cross-motion to dismiss. Defendants appeal.[1]

█ The sole issue before us is whether either a state statute of limitations or the doctrine of laches may be utilized by these defendants to bar action by the United States to enforce rights of the Reconstruction Finance Corporation. We affirm the determination by the district court that this action may not be so barred.

The facts are not disputed and may be briefly stated. On September 26, 1946 Anthony M. Meyerstein, Inc. executed a note for $1,725,000 evidencing a loan made to it by the RFC, and Anthony M. Meyerstein and Theodore B. Meyerstein, officers of the corporation, executed a guarantee of that note. On June 2, 1948 defendant 93 Court Corporation, by its president, Anthony M. Meyerstein, executed a mortgage as collateral security for the note. The note provided that interest was to be paid on the 26th of each month and that the principal and any unpaid interest were payable on September 26, 1948. The mortgage provided that the mortgagor waived all demand, notice of nonpayment or other default; and, too, that the holder of the mortgage in any action to foreclose it was entitled to have a receiver appointed. Meyerstein, Inc. defaulted on the note, leaving $132,563.38 in principal, and unpaid interest from February 24, 1950, due and owing.

On June 30, 1957, pursuant to a reorganization plan that abolished the RFC and distributed its assets and functions among various other agencies, the mortgage of 93 Court Corporation was transferred to the Administrator of the Small Business Administration. In November 1963, in order to recover the remaining unpaid principal and interest, the United States commenced this action against the owner-mortgagor 93 Court Corporation and the Meyersteins to foreclose the mortgage. The defendants pleaded the New York statute of limitations applicable to actions commenced upon

---

* Judge Marshall heard oral argument and participated in the decision in this case, voting to affirm. He resigned to become Solicitor General of the United States before he could formally concur.

1. We have jurisdiction to review this interlocutory order appointing the receiver, 28 U.S.C. § 1292(a) (2) and the propriety of this order depended in turn on the appropriateness of the denial of defendants' cross-motion.

mortgages of real property,[2] and the lower court ruled that this defense was not available against the government.

 The rule *nullum tempus occurrit regi*—the statute of limitations does not run against the sovereign—is explained historically as a vestige of the privileges of the English king. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). Its survival in this country has been attributed to the policy that the public interests should not be prejudiced by the negligence of public officers. United States v. Nashville, C. & S. L. Ry., 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81 (1886); United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194 (1878). As recently as 1940 the Supreme Court termed the exemption of the United States from the bar of statutes of limitations or from the defense of laches a "well settled" rule of law. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). We are bound by this rule,[3] and the appellants recognize that we are.

 Appellants say, however, that the rule does not apply to bar actions brought to enforce obligations owed to the RFC. They contend the rule that state statutes of limitations do not bar actions to enforce rights of the United States is but one manifestation of the doctrine of sovereign immunity, and therefore limiting rules confining the application of this doctrine should be here applied. One such limiting rule, and the rule on which appellants principally rely, states that "immunity in the case of a governmental agency is not presumed." RFC v. J. G. Menihan Corp., 312 U.S. 81, 84, 61 S.Ct. 485, 486, 85 L.Ed. 595 (1941). Appellants rightly point out that nowhere in the Act creating the RFC is there any indication that Congress intended rights acquired by the RFC to override state statutes of limitations, and therefore argue that in the absence of any such Congressional intent we should not presume that Congress intended to confer this immunity on the RFC. We are urged to hold that when the United States seeks to enforce a right acquired from the RFC it must submit to the same laws that govern other suitors. We cannot agree. In Keifer & Keifer v. RFC, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939), Mr. Justice Frankfurter stated that because the doctrine of sovereign immunity "gives the government a privileged position, it has been appropriately confined." Id. at 388, 59 S.Ct. at 517. But it was not a mere "privilege" that invoked confinement in that case. More important was the fact that the questioned privilege was immunity from suit, a privilege that if allowed unrestricted application would render individuals almost powerless to remedy an abuse of official power. Foreseeing the consequences of an unchecked use of the doctrine of sovereign immunity courts early announced that courts would not infer it, and indicated that Congress, if it wished government corporations to enjoy it, must, in terms, endow them with it.

There is not the same need to confine the application of the rule that the United States is exempt from statutes of limitations and the defense of laches unless Congress provides otherwise, as there is a need to confine the immunity of the sovereign from suit. This rule does not serve to immunize the government from the claims of individuals but is simply the most important of a num-

---

2. The lower court held that defendants were relying upon section 47-a of the old New York Practice Act. Neither party quarrels with this holding on appeal.

3. It is worth noting that the issue raised here is distinct from that posed by an Act of Congress that creates a private right of action but does not contain a statute of limitations. In those situations Congress's silence has been construed so as to make state statutes of limitations available to the defendant. E.g., Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906).

ber of advantages, both statutory,[4] and court-made,[5] that the United States enjoys when it goes into court. Wright, Federal Courts, 60–61 (1963). The policy underlying this exemption is that the failure of a government employee to bring an action within the time prescribed by a state statute of limitations should not bar the government from bringing the action if the action is one to enforce public rights or to protect the public fisc. This rule allows the government to maintain belated actions to enforce public rights regardless of the "governmental" or "business" nature of the government-sponsored activity that created the rights. See United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) (enforcement of rights acquired through Federal Housing Administrator under National Housing Act allowed despite running of statute of limitations); Chesapeake & Del. Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889 (1919) (suit to recover dividends allowed despite running of statute of limitations). We believe the policy underlying this exemption to be generally salutary and we decline to hold that Congress must specifically endow each government corporation it creates with an expressed exemption from the bar of statutes of limitations or from the defense of laches. The Supreme Court has never ruled that there is no presumption of immunity when the United States is a plaintiff.[6]

In summary, the present action is brought by the United States to enforce a right acquired by the RFC. This right is a right of the United States that can be enforced by and in the name of the United States. Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946). It

follows that neither the New York statute of limitations nor the doctrine of laches bars the enforcement of this right. This conclusion is supported by the decision of at least one other court of appeals. United States v. Borin, 209 F.2d 145 (5 Cir.), cert. denied, 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954).

The order below is affirmed.

---

4. E.g., Fed.R.Civ.P. 12(a) (United States given extra time to file an answer); Fed. R.Civ.P. 73(a) (United States given extra time to take an appeal).

5. Causey v. United States, 240 U.S. 399, 36 S.Ct. 365, 60 L.Ed. 711 (1916) (in rescission action United States not required to make tender).

6. Of course, Congress remains free to enact statutes of limitations applicable to certain claims of the United States. See, e.g., Act of March 3, 1891, 26 Stat. 1093 (six year limit on actions to annul land patents).