**S.E.R., JOBS FOR PROGRESS,
INC., Appellant,**

v.

**UNITED STATES, Appellee.**

**Appeal No. 84–1385.**

United States Court of Appeals,
Federal Circuit.

March 28, 1985.

Eduardo Pena, Jr., Pena, Aponte & Ortiz-Daliot, Washington, D.C., for appellant.

R. Anthony McCann, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director, Washington, D.C.

Before KASHIWA, Circuit Judge, COWEN, Senior Circuit Judge, and SMITH, Circuit Judge.

COWEN, Senior Circuit Judge.

S.E.R., Jobs for Progress, Inc. (SER) appeals from a decision of the Department of Labor Board of Contract Appeals (Board), which in part denied an SER appeal of a 1981 decision by a contracting officer of the Department of Labor (DOL) disallowing certain costs incurred under a 1972–73 contract. For the reasons to be set forth, we hold that this court has jurisdiction and we reverse the Board's decision and remand the case to it.

## I.

In 1972, DOL and SER entered into a cost reimbursement contract for manpower training services, effective from September 16, 1972 to September 15, 1973. The contract incorporated DOL's General Provisions (GP) for cost reimbursement contracts. GP 4 provided for prepayment by the Government to the contractor of the costs of contract performance and for recoupment by the Government of any overpayments or otherwise disallowed costs found on audit. Three contract modifications lowered the overall contract price from $18 million to $16.2 million, and extended the term of the contract until October 15, 1973.

The contract was audited by DOL shortly after its termination. A final audit report for the prime contract was issued in January 1975, and other final audit reports pertaining to certain subcontracts were issued at about the same time, questioning a total of $711,991 in costs assessed to the Government. Negotiations between DOL and SER over these proposed disallowances ensued. According to SER, these negotiations resulted in a settlement in April 1975 by a repayment of $7,060.13 by SER to the Government.

After these negotiations were concluded, nothing was heard by SER from DOL with respect to the contract until July 9, 1981 (more than 6 years later), when the contracting officer issued an initial determination, based on the 1975 audit reports, that SER owed $688,412 in disallowed costs. In the interim (in November 1979), SER had moved its national office from Los Angeles to Dallas and had destroyed records of various contracts, including the instant contract, which the employees of SER believed had been settled or otherwise resolved.

Approximately 1 month after the contracting officer issued his initial determination, he released his final decision, disallowing costs of $688,412 and requesting that SER repay that amount to the Government within 30 days. Pursuant to the standard Disputes clause of the contract, SER appealed to the Board, requesting that it order DOL to cease collection actions and/or administrative sanctions, and that it invalidate the final determination of the contracting officer, along with the Depart-

ment's requests for payment of disallowed costs. After a hearing, in a decision rendered in August 1983, the Board reduced the amount of disallowed costs to $345,382. On reconsideration, the amount was further reduced to $331,714.75, but the Board denied SER's appeal in all other respects. SER's timely appeal to this court followed.

## II.

The Government contends that this court lacks jurisdiction over SER's appeal. Citing *North American Corp. v. United States*, 706 F.2d 1212, 1213 (Fed.Cir.1983), the Government argues that the Contract Disputes Act of 1978 (Act), 41 U.S.C. § 601, *et seq.*, is not applicable to SER's claim. That decision is inapposite, because there the contractor's claim was pending before a board of contract appeals on March 1, 1979, when the Act became effective. Here, the contractor's claim was initiated after the effective date of the Act.

Under section 16 of the Act, claims based on a contract executed prior to the effective date of the Act but initiated thereafter are subject to the Act only if the contractor elects to proceed thereunder. 41 U.S.C. § 601 note (Supp. V. 1981). SER failed to make such an election in the original proceeding before the Board. However, in its motion for reconsideration, SER elected to proceed under that Act and requested the Board to hold that it applied to the contract. The Board denied the request on the ground that SER had not given the Board or the Government reasonable notice that an election to proceed under the Contract Disputes Act was intended. At the same time, the Board stated that SER's position as to the applicability of the Act and the Board's rejection of that position was "not seen by the Board as affecting any material right" of SER. Citing two cases from our predecessor court, the Court of Claims, the Government contends in this appeal that SER's election before the Board came too late. *See Santa Fe Engineers, Inc. v. United States*, 677 F.2d 876, 878, 230 Ct.Cl. 512 (1982); *Tuttle/White Constructors,*

*Inc. v. United States*, 656 F.2d 644, 646–49, 228 Ct.Cl. 354 (1981).

We do not think the Government's theory is supported either by section 16 of the Act or the case law cited. As *Tuttle/White* recognizes, "the Contract Disputes Act does not set forth a specific time period within which an election to proceed under that act must be made, nor does the act prescribe the manner in which such election must be made." 656 F.2d at 647. Moreover, contrary to the Government's contention, *Tuttle/White* and *Santa Fe* do not, in all circumstances, prohibit contractors of pre-1979 contracts from electing to proceed under the Act if they had not made this election during the initial proceeding before the Board. They merely hold that contractors who are notified of their appeal rights under the Act by the contracting officer cannot change avenues of appeal once they make a "conscious and unwaivering election" to follow a particular route. *Id.* at 648; *see also Santa Fe*, 677 F.2d at 878.

■ In the instant case, the contracting officer did not notify SER that it had any right to elect to appeal under the Contract Disputes Act. The decision of the contracting officer stated only that SER had the right to appeal to the Board within 30 days under the Disputes clause of the contract and DOL regulations, and SER appealed in accordance with this advice. This action by SER cannot be considered a "knowing election" under the Act. *See Santa Fe*, 677 F.2d at 878. When the contractor's action in initially proceeding under the disputes clause was not such a "knowing election," our predecessor court has permitted a contractor to change its avenue of appeal thereafter. *See National Electric Coil v. United States*, 227 Ct.Cl. 595 (1981).

■ Absent a knowing election by the contractor, the Government must show that such a late election "would result in prejudice or would violate the Act's purpose of ensuring a speedy and efficient resolution of disputes." *Trinity Services, Inc.*, 79–2 BCA ¶ 14,090 at 69,301 (ASBCA 1979). Here, the Government made no showing of prejudice to it resulting from

**4**

SER's late election. Hence, we hold that our jurisdiction is not precluded by SER's failure to initially elect to proceed under the Act.

### III.

In its appeal, SER seeks reversal of the Board's decision on the following grounds:

1. The Government's claim against it was settled either by agreement of the parties or by an accord and satisfaction;

2. The Government's claim is barred by 28 U.S.C. § 2415, the statute of limitations relating to actions for money damages brought by the Government; and

3. The Government's claim is barred by the doctrine of laches.[1]

### IV.

SER first contends on the merits that the Government's claim against it was settled in 1975, either by an agreement of the parties or by an accord and satisfaction. The evidence it proffers of this settlement consists primarily of a letter dated April 9, 1975, from SER's comptroller to Gale Gibson of DOL. Mr. Gibson was not a contracting officer, and the record does not disclose his official status in relation to the contract. The letter notes that payment of $7,060.13 had been made to DOL by two cashier's checks, and that an enclosed invoice showing a refund of $7,060.13 "should hopefully reflect all the necessary changes to close-out this contract and to reflect those reimbursements to DOL that we have agreed upon during our meetings."

■ Such evidence, even when combined with the acceptance of the payment by DOL and its long silence thereafter, must be deemed insufficient to establish that a settlement or an accord and satisfaction of the claim took place. In the first place, the record lacks any indication of the capacity in which Gale Gibson served at

DOL, let alone whether he had authority to settle the agency's claim. It is well established that a purported agreement with the United States is not binding unless the other party can show that the official with whom the agreement was made had authority to bind the Government. *Jascourt v. United States*, 521 F.2d 1406, 207 Ct.Cl. 955 (1975); *Housing Corp. of America v. United States*, 468 F.2d 922, 925, 199 Ct.Cl. 705 (1972).

■ Additionally, even if SER had shown that Mr. Gibson was authorized to bind the Government, the evidence does not show a meeting of the minds of the parties—an essential ingredient of a settlement or an accord and satisfaction. *Brock & Blevins Co. v. United States*, 343 F.2d 951, 955 (Ct.Cl.1965). Instead, the most SER has shown is that negotiations took place in early 1975 with Mr. Gibson, and that it believed that the $7,060.13 payment it made was in full satisfaction of the Government's claim. The use of the word "hopefully" in the April 1975 letter from SER to Mr. Gibson, together with the lack of any confirming response from Mr. Gibson or DOL, precludes a finding that any meeting of the minds took place.

### V.

■ SER also contends that the Government is barred from raising its claim for reimbursement by 28 U.S.C. § 2415. This statute provides in pertinent part:

* * * [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or one year after final decisions have been rendered in applicable administrative proceedings required by contract or law, whichever is later * * *.

---

1. SER also challenges the Board's decision on the ground that the disallowance of SER's costs was arbitrary, contrary to the provisions of the contract, and that the decision is not supported by substantial evidence. In its prayer for relief,

SER requests the court to order the Government to cease collection actions or sanctions against it on matters relating to the contract. In view of our disposition of the case, we do not consider these matters.

SER contends that at the very latest, the Government's cause of action against it accrued at the time of the final audit in January 1975, and that the Government's claim is barred because more than 6 years elapsed between that audit and the final determination of the contracting officer. SER further maintains that the 1-year provision relating to the conclusion of administrative proceedings applies only in cases, unlike the one at bar, in which the Government commenced administrative proceedings within 6 years of the accrual of the cause of action. Any other reading of the statute of limitations would, according to SER, put no limit on the amount of time agencies could delay before commencing administrative proceedings.

The flaw in SER's argument is that the challenged action is not an "action for money damages brought by the United States," as expressly required by the statute. Instead, it is an administrative appeal by a contractor from a contracting officer's decision that the contractor owes the Government the amount of certain disallowed costs. Therefore, we hold that 28 U.S.C. § 2415 is inapplicable on its face.

### VI.

SER argues here as it did before the Board that the claim against it is barred by laches. The doctrine of laches has been described by the Court of Claims as:

> * * * a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury [or] prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. As an equitable defense, laches is applied apart from, and irrespective of, statutes of limitations.

*Brundage v. United States,* 504 F.2d 1382, 1384, 205 Ct.Cl. 502 (1974).

The defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). The first element has been clearly satisfied by SER in this case. Throughout this litigation, the Government has failed to suggest a single reason for the delay of 6½ years between its final audit and the initial determination of its contracting officer. During that long interval, DOL failed to communicate with SER concerning the subject contract, even after SER sent a payment and letter stating that its claim was hopefully settled.

After a careful review of the record, however, we have concluded that the Board's findings of fact are inadequate to determine the extent to which SER was prejudiced by the Government's inexcusable delay.

The Board did give some consideration to SER's contention that the presentation of its defense was severely hampered by the fact that by the time it was presented with the decision of the contracting officer, SER had destroyed approximately 12 filing cabinets of documents during its 1979 move of its national office. Many of these documents related to the instant case. GP 6 of the contract required the contractor to preserve records for 3 years after the date of final payment and until all litigation, claims or appeals thereto had been disposed of. SER maintained the records for a period of more than 3 years, and then destroyed them in the belief that the contract had been closed as of April 9, 1975, having received no advice to the contrary from DOL. In its initial decision, the Board found that the failure of the Government to act on the audit from 1975 to 1981 did not provide a basis for the destruction of the records 3 years after the audit was completed. With this finding, the Board concluded that SER failed to prove the elements of laches. If this had been the

Board's final determination, we would reject it on the ground that the Board failed to consider other evidence of prejudice to SER and would hold that the finding is not supported by substantial evidence and that the conclusion is legally erroneous. However, on reconsideration, the Board held that while there was some merit to SER's position, the evidence was insufficient to justify an exception to the basic rule that laches does not bar claims against the Government.

In view of the incomplete record, we find that we cannot accept this conclusion as a basis for resolving the difficult questions raised by the laches defense. Therefore, we have determined that it is necessary to remand the case to the Board to make specific findings of fact on SER's contention that it was severely prejudiced by the Government's 6½ year delay in the following particulars:

1. Since SER heard nothing from DOL from April 9, 1975, (the date SER claimed the contract was closed) to July 9, 1981 (the date of the contracting officer's initial decision), the circumstances were sufficient to give SER a reasonable belief that it was not required to maintain its records for more than 3 years after April 9, 1975. These circumstances include the fact that in prior dealings between DOL and SER, DOL never sent SER any notices that contracts were "closed" after balances due on the contract were settled as a result of prior negotiations.

2. The lack of SER's corroborating records was a significant factor in a number of determinations rendered in favor of the Government. When SER was unable to present evidence to rebut the contracting officer's determinations on the basis of the audit, the Board accepted the contracting officer's calculations.

3. The Government was able to use its 1975 audit as evidence and the audit was relied upon heavily by the Board, whereas nearly all the witnesses with first-hand knowledge of the facts, including the four top officers of SER, DOL's contracting of-

ficer from 1975, and Gale Gibson, were unavailable to testify.

4. The Government failed to produce DOL records which were specifically requested by SER and the Government could not provide SER with the names of the auditors who performed the audit.

5. SER's witnesses who testified had limited knowledge of the facts, and the only DOL witness had no first-hand knowledge of any of the facts.

## VII.

As previously stated, the Board rejected SER's laches defense on the ground that laches is inapplicable to a suit brought by the Government to enforce its rights. In this appeal, the Government contends that the laches defense is without merit, because our predecessor court, the Court of Claims, often held that laches does not apply in a contract action against the Government. In view of the incomplete administrative record, the need for a remand, and the reasons hereinafter discussed, we decline to hold at this stage of the proceedings that the Government's claim is not barred by laches.

A. As the Board stated, various courts have followed the traditional rule that the United States is not subject to the defense of laches in enforcing its rights. These decisions are based primarily on *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) and *Summerlin v. United States*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). However, the courts have not been unanimous in this holding. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 369, 63 S.Ct. 573, 576, 87 L.Ed. 838 (1943) (the United States is not immune from laches in asserting a claim on commercial paper); *EEOC v. American National Bank*, 420 F.Supp. 181, 183–85 (E.D.Va.1976) (Government discrimination claim held barred by laches and Administrative Procedure Act delay provision; applicability of laches against Government said to depend on the facts of each case).

B. In two recent cases the courts have stated that some relaxation of the tradition-

al rule against the application of laches may be developing, and implied that exceptions to the rule might be approved in certain cases. However, in both it was held that the facts there being considered did not justify the invocation of such a defense against the Government. *See, e.g., United States v. Ruby Co.,* 588 F.2d 697, 705 n. 10 (9th Cir.1978); *Roberts v. Morton,* 549 F.2d 158, 163–64 (10th Cir.1976). Other recent cases either did not involve a contract or tort action covered by 28 U.S.C. § 2415 or did not discuss the implications of the passage of this statute. *See United States v. Weintraub,* 613 F.2d 612, 618–19 (6th Cir.1979); *United States v. Arrow Transportation Co.,* 658 F.2d 392, 394–95 (5th Cir.1981). *See also, infra* note 2.

C. The Court of Claims considered the defense of laches against the Government in a case involving an equitable counterclaim to recover illicit gratuities from plaintiffs in response to an unrelated claim for civilian pay. *Lane v. United States,* 639 F.2d 758, 226 Ct.Cl. 303 (1981). There the court noted that modern statements of the traditional rule against laches are usually phrased to allow exceptions in appropriate circumstances. *Id.,* 639 F.2d at 761. The court found that the Government's position was wanting in equity, because it was unreasonably delayed, trivial in nature, and no longer capable of adequate verification. Therefore, the court held that the equitable counterclaim was barred by laches.

D. The traditional rule that laches cannot run against the sovereign originated from notions of royal privilege, but, in modern times, has been consistently attributed to the public policy of preserving public rights and property against the negligence of public officers. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938); *United States v. 93 Court Corp.,* 350 F.2d 386, 388 (2d Cir.1965). The identical policy has been uniformly stated as the sole reason for the traditional rule which immunized the Federal Government from statutes of limitations. *See Guaranty Trust Co.,* 304 U.S. at 132, 58 S.Ct. at 788; *93 Court Corp.,* 350 F.2d at 388.

In some cases which have discussed the general rule against the application of limitations and laches against the Government, the courts have stated that the rule applies absent a clear manifestation of congressional intent to the contrary. *See, e.g., Cassidy Commission Co. v. United States,* 387 F.2d 875, 880 (10th Cir.1967); *93 Court Corp.,* 350 F.2d at 388; *United States v. Lutheran Medical Center,* 524 F.Supp. 421, 424 (D.Neb.1981), *aff'd,* 680 F.2d 1211 (8th Cir.1982). Apropos of these statements is the fact that on July 18, 1966, Congress passed Public Law 89–505 (codified at 28 U.S.C. § 2415), the statute of limitations on contract and tort actions brought by the United States. In recommending passage of the law, the reports of the House and Senate Judiciary Committees stated:

> * * * The Government litigation covered by the bill arises out of activity which is very similar to commercial activity. Many of the contract and tort claims asserted by the Government are almost indistinguishable from claims made by private individuals against the Government. Therefore it is only right that the law should provide a period of time within which the Government must bring suit on claims just as it now does as to claims of private individuals. The committee agrees that the equality of treatment in this regard provided by this bill is required by modern standards of fairness and equity.

H.R.Rep. No. 1534, 89th Cong., 2d Sess.; *quoted in* S.Rep. No. 1328, 89th Cong.2d Sess.; *reprinted in* 1966 U.S.Code Cong. & Ad.News 2502, 2503.

The Committee reports also said:

> * * * The emphasis on fairness * * * is a very important consideration and the principal basis for the bill * * *. [If the bill is passed, t]he Government will be barred from asserting old and stale claims in the courts and the necessity for the early assertion of claims will require increased efficiency in Government claims proceedings.

1966 U.S.Code Cong. & Ad.News at 2508, 2509.

Thus, the clear purpose of Congress in passing Public Law 89–505 was to promote fairness to parties defending against stale Government contract and tort claims notwithstanding whatever prejudice might accrue thereby to the Government as a result of the negligence of its officers.[2]

We recognize that Congress did not provide in Public Law 89–505 that laches, as well as limitations, should henceforth run against the Government in tort and contract cases. But one would not expect such action by Congress, inasmuch as laches is an equitable doctrine created and applied by judges. However, the same policy considerations which led to the enactment of the statute of limitations against the Government underlie the doctrine of laches.

E. The Government's argument that laches cannot apply in any Government contract case originates from a number of Court of Claims cases, which have stated that the court has never applied laches in a contract action. *See, e.g., Standard Oil Co. of California v. United States*, 685 F.2d 1322, 1334, 231 Ct.Cl. 86 (1982); *Fraass v. United States*, 505 F.2d 707, 711, 205 Ct.Cl. 585 (1974); *Kaiser Aluminum & Chemical Corp. v. United States*, 388 F.2d 317, 319, 181 Ct.Cl. 902 (1967).

While acknowledging that the Court of Claims has consistently declined to apply laches in Government contract cases, we do not read its decisions as precluding the application of this doctrine in all such cases. Even in those contract cases where it declined to apply laches, the court generally refrained from stating that laches could never apply in such cases. Instead, in most of them, the court added that the facts under consideration did not justify invoking the doctrine of laches. *See, e.g., Standard Oil*, 685 F.2d at 1334; *Fraass*, 505 F.2d at 711; *Kaiser*, 388 F.2d at 319.[3]

We think that the rationale for the court's decisions in the contract cases cited above was explained in *Maxan Dress Corp. v. United States*, 115 F.Supp. 439, 444, 126 Ct.Cl. 434, 442 (1953), a contract case, in which the court stated:

> Implicit in the concept [of laches] is the idea of prejudice to the opposing party by the surprising assertions of duties owed or rights violated at a time when the elements of proof are obscured by the passage of months or years, or subsequent to some prejudicial change of position by the party sued. It is the absence of this element of prejudice to the defendant which renders the application of this equitable doctrine inappropriate here.

*Accord, J.F. Hodgkins Co. v. United States*, 318 F.2d 932, 936, 162 Ct.Cl. 40 (1963).

Thus, after a careful perusal of the foregoing Court of Claims contract cases, we do not think that the thrust of the decisions is that laches is always inapplicable *per se* in any contract or other claim where a legal

---

**2.** We note that in two cases, other courts have acknowledged the significance of the passage by Congress of Public Law 89–505 in connection with the apparent assertion by private plaintiffs of laches claims against the Government. *See Cassidy Commission Co.*, 387 F.2d at 880 n. 9; *United States v. Sabine Towing and Transp. Co.*, 289 F.Supp. 250, 253 (E.D.La.1968). In each of these instances, however, the courts did not apply the statute of limitations or laches against the Government because suit was brought within months of the enactment of the statute, and the statute provided that all prior rights of action will be considered to accrue on the date of its enactment. 28 U.S.C. § 2415(g).

**3.** We call attention to one Government contract case where the court ruled against the defendant by holding, without saying more, that laches is unavailable as a defense in contract cases. In *H & M Moving, Inc. v. United States*, 499 F.2d 660, 672, 204 Ct.Cl. 696 (1974), the facts were that plaintiff's delay in asserting a contract claim amounted only to several months. The defense found valid by the Board (which was reversed by the court) was equitable estoppel, not laches. *See id.*, 499 F.2d at 676 (Davis, *J.*, concurring in part and dissenting in part). Moreover, the holding was based on a quoted passage from *Kaiser*, which stated only that laches had not as yet been applied as a defense to a contract action.

rather than an equitable remedy is sought.[4] Instead, the court has decided that laches cannot ordinarily be invoked as a defense to legal claims where a statute of limitations is normally available to preclude the recovery on stale claims, unless the offended party has been unmistakably prejudiced by the delay in the assertion of the claim.

## CONCLUSION

We do not decide, and because of an inadequate administrative record, we cannot now decide that the Government's claim is barred by laches. It follows from the foregoing opinion, however, that the decision of the Board is reversed and the case is remanded to it with instructions to make new findings of fact and conclusions of law on the laches issue as indicated in Part VI hereof.

**REVERSED AND REMANDED**

---

**4.** When legal claims were asserted in military and civilian pay cases, the court frequently applied laches, even in suits filed within the limitations period. This was done where the plaintiff's delay in filing suit clearly prejudiced the Government if it were required to award back pay for a period when no work was done. *See, e.g., Deering v. United States,* 620 F.2d 242, 246, 223 Ct.Cl. 342 (1980); *Brundage,* 504 F.2d at 1387.