**UNITED STATES of America, Plaintiff,**

v.

**Bennett E. MARGOLIS, Linda Margolis, and Sysco Corporation, Defendants.**

**No. 90–1168–CIV.**

United States District Court,
S.D. Florida.

March 7, 1991.

Linda S. Cook, U.S. Atty., Audrey Goldman, Small Business Admin., Washington, D.C., for plaintiff.

Roger A. Bridges, Coral Gables, Fla., for defendants.

## ORDER GRANTING FINAL SUMMARY JUDGMENT OF FORECLOSURE

MORENO, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment. The Court has considered the motion, defendants' memorandum in opposition to plaintiff's motion, plaintiff's reply memorandum, the evidence filed in this matter, including the verified statement of facts and affidavits, and the pertinent portions of the record. For the reasons that follow, the Court grants plaintiff's motion.

### FACTUAL BACKGROUND

This is an action to foreclose on a mortgage initiated by plaintiff United States on behalf of the Small Business Administration (SBA). On December 20, 1984, the SBA executed an Authorization and Loan Agreement which guaranteed a loan from Dixie National Bank of Dade County to Bennett's Restaurant, Inc.

Paragraph 3(c)(5) of that agreement required the bank to obtain the guaranty of defendants Bennett Margolis and Linda Margolis, secured by a second mortgage on their real estate. On January 14, 1985, Bennett's Restaurant, Inc. executed a note in the principal amount of $252,000 made payable to Dixie National Bank. The note was endorsed and assigned without recourse to the SBA on January 30, 1985. In compliance with the loan agreement, defendants Bennett and Linda Margolis executed a guaranty agreement unconditionally guaranteeing repayment of the loan made to Bennett's Restaurant.

At the time of the execution of the guaranty, defendants executed and delivered to the Dixie National Bank a real estate mortgage, dated January 14, 1985, and recorded on January 16, 1985.[1]

The note went into default on June 12, 1985, as a result of the filing of bankruptcy of Bennett's Restaurant. Demand was made for payment under the guaranty agreement but no payments have been made. Pursuant to its election of remedies, plaintiff has elected to declare the entire amount due on the note. The defendants are the fee simple owners of the subject property.

### LEGAL ANALYSIS

The record in this matter reflects that there are no genuine issues of material fact, and pursuant to Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment is therefore proper.

Defendants Bennett and Linda Margolis have admitted nonpayment of the note but advance four affirmative defenses as justification for the nonpayment.[2] Defendants assert that: (1) the action to foreclose the mortgage on the defendants' home is time barred; (2) the foreclosure action is barred by laches; (3) the action is barred by the doctrine of estoppel and (4) the mortgage should be cancelled or reformed. In an understandable effort to defeat plaintiff's motion for summary judgment, defendants contend that each of the defenses above is a disputed issue of fact. Defendants' arguments are not persuasive.

---

1. The mortgage was assigned to the SBA on July 15, 1985 and recorded on July 18, 1985.

2. Defendants have also filed a counterclaim for reformation or cancellation of the existing mortgage.

■ Defendants' first affirmative defense that the action is barred by the statute of limitations fails for two reasons. First, absent circumstances not present in the case at bar, the government is generally not subject to the statute of limitations. *U.S. v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940).

Second, the statute of limitations applicable to this deficiency action provides for a six-year limitations period. 28 U.S.C. § 2415(a). The promissory note executed by defendants is dated January 14, 1985. The complaint which seeks a deficiency against defendants as guarantors was filed on May 15, 1990, well within the statutory time limitation.

■ Defendants also assert that the affirmative defense of laches bars plaintiff's claim. The basis of this defense is that the government failed to timely exercise its legal rights and have therefore misled or prejudiced defendants. Assuming defendants' allegations to be true for the purposes of this motion, laches does not generally apply to the government. *United States v. Summerlin, supra.* Defendants rely on *S.E.R. Jobs for Progress, Inc. v. United States,* 759 F.2d 1 (Fed.Cir.1985), in support of their position.

■ In *Jobs for Progress,* the Court did allow that some relaxation of the traditional rule against the application of laches *may* be developing and, at best, implied that exceptions to the general rule might be approved in certain situations. The requirement that there must be a showing of detriment or disadvantage to the defendant occasioned by the delay remains indispensable to a finding of laches. Defendants are not able to make such a showing in the instant action.

■ Furthermore, defendants have not been prejudiced, as plaintiff's failure to foreclose its mortgage allowed defendants to live in their home without making payments on the second mortgage. *See Florance v. Johnson,* 366 So.2d 527 (3d DCA 1979) (a foreclosure action was not barred by laches since any delay in enforcing the mortgagee's rights acted only to the benefit of the mortgagor by permitting the mortgagor to remain in her home).

Defendants cite *Ratner v. Miami Beach First National Bank,* 368 So.2d 1326 (Fla. 3d DCA 1979), as a case in which laches was applied to the government. *Ratner* is easily distinguishable in that the defense was asserted against a private bank, and the foreclosure action was brought 13 years after the date the note and mortgage were signed. Here, the defense is being asserted against the federal government and only five years have passed.

Additionally, the Third District Court of Appeals has reiterated its holding in the *Florance* case, reaffirming that a mortgagor was not prejudiced by the mortgagee's delay in filing a foreclosure action since the mortgagor benefitted by remaining in her home. *Gevertz v. Gevertz,* 566 So.2d 541 (Fla. 3d DCA 1990).

Defendants' third affirmative defense of estoppel is based on the allegation that representatives of Dixie National Bank, plaintiff's predecessor, induced the defendants to give a mortgage on their residence by promising that, in the event of a default by defendants, Dixie would not foreclose. Additionally, defendants contend that an SBA officer orally agreed to reduce the amount of the mortgage lien on the defendants' home to the sum of $25,000.

Specifically, defendants claim that Paul Rauschenplat is the authorized representative of the SBA who made the statement to defendants that the mortgage would be reduced to $25,000. Plaintiff contends that Mr. Rauschenplat did not make such an agreement but even if he did, he did not have the legal authority to do so and is therefore, not binding on the SBA. Plaintiff asserts that even if such allegations are true, the United States is not bound by an unauthorized representation and the affirmative defense of estoppel cannot be asserted against the government.

■ 13 C.F.R. § 122.20(c) provided the controlling legal authority with regard to modification of the terms of an authorization of an SBA guaranteed loan in January 1985, the time the defendants executed the

mortgage on their real estate. The statute did not confer on a representative of Dixie National Bank the authority to modify the terms of the Authorization and thus with the authority to release the defendants from the terms of the mortgage. Any modification must have been made in writing by an authorized employee of the SBA. *See, e.g., Benson v. United States Small Business Administration,* 644 F.2d 1366 (9th Cir.1981).

Anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. This is so even though the agent himself may have been unaware of the limitations upon his authority. *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

The United States is neither bound nor estopped by the acts of its officers or agents in entering into any agreement contrary to the law. *See, e.g., United States v. San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940). Courts have also held that summary judgment is the appropriate remedy unless a defendant produces evidence that the agency representative had the authority to orally contradict the clear terms of the guaranty or that the representative had any authority to modify the terms of the loan authorization. *See United States v. Walker,* 698 F.Supp. 614 (D.Md.1988). Defendants have failed to produce such evidence.

Defendants contend that they suffered detriment sufficient to merit the application of laches against plaintiff due to the delay in initiating foreclosure proceedings and by the statements made to the defendants by bank officers and by an SBA officer. Specifically, defendants contend that they have continued to make the first

mortgage payments, taxes, insurance, repairs and replacements on the home in the belief that they would be able to stay in the home by paying the $25,000.[3] Defendants assert that they would not have continued to make these payments had they known that the SBA intended to foreclose on the mortgage. Defendants' assertions are not persuasive for two reasons: (1) defendants were legally obligated to make such payments; and (2) such factual assertions are legally insufficient to excuse payment on the second mortgage.

Defendants fourth affirmative defense is also grounded in estoppel. Defendants assert that the mortgage should be cancelled or reformed to show the true intent of the parties. Defendants initially contend that the fact that Magistrate Johnson recommended that the government's motion to dismiss the counterclaim be denied is somehow persuasive in the present motion before the Court. It is indisputable that defendants now possess a much greater burden in opposing a motion for summary judgment than they did in surviving a motion to dismiss. Fed.R.Civ.P. 56. Magistrate Johnson's earlier ruling is inapplicable to the instant motion.

Defendants further contend that the amount outstanding on the note is grossly in excess of any equity in the home and it is inequitable to allow foreclosure for that reason. Defendants acknowledge that the amount owed under the note, together with interest is approximately $410,000. They counter the amount owed with an estimate as to the equity in the house of an amount less than $50,000. The accuracy of the estimate is irrelevant. Plaintiff is entitled to whatever equity may exist in the defendants' house by virtue of the mortgage lien.

### FINAL JUDGMENT

WHEREFORE, it is ADJUDGED as follows:

---

**3.** It was allegedly in 1986 that an SBA official and loan officers promised that the mortgage would not be foreclosed, prior to the signing of the guaranty.

1. Plaintiff is the owner and holder of the note and mortgage sought to be foreclosed in this case.

2. Such note is in default.

3. Plaintiff is entitled to foreclosure of its mortgage lien on the following described property, which is the subject of this action:

Lot 33, in Block 6, of CYPRESS COVE ESTATES, SECTION TWO according to the Plat thereof, as recorded in Plat Book 77, Page 8, of the Public Records of Dade County, Florida.

4. Plaintiff's mortgage lien is prior in date and superior in dignity to any right, title, interest, claim, or demand of any of the defendants in this action.

5. There is due and owing plaintiff United States, by defendants Bennett E. Margolis and Linda Margolis, on account of their guaranty of the note executed by Bennett's Restaurant, Inc., on or about January 14, 1985, described in paragraph 3 of the complaint, and which note is now owned by plaintiff, $237,597.98 in unpaid principal; $173,015.26 in interest through December 31, 1990; and $81.37 in interest at the daily accrual rate. Unless such monies are paid within ten days of the date of this Final Judgment to the plaintiff or its attorneys, the United States Marshal, or his duly authorized deputy, is authorized and directed to sell the subject property at a public sale at a date and time to be set by him to the highest and best bidder for cash, with the exceptions set forth below, on the steps of the Dade County Courthouse in Miami, Florida. The United States Marshal, or his authorized deputy is directed to publish a notice of sale, describing the property to be sold, once a week for four (4) consecutive weeks immediately prior to sale, in a newspaper of general circulation in Dade County, Florida; such sale to be made to the highest and best bidder for cash.

6. Plaintiff may be a bidder for the purchase of the property. If the plaintiff is the purchaser at the sale, the Marshal shall credit on the bid of the plaintiff the total sum found to be due to plaintiff or such portion thereof as may be necessary to pay fully the bid of plaintiff.

7. That upon receipt of the purchase price bid at such sale, the United States Marshal, or his authorized deputy, shall make a report of the sale to this Court for confirmation. Upon such confirmation, the Marshal is directed to make and execute a good and sufficient Marshal's Deed conveying the real property to the purchaser(s).

8. Upon confirmation of the sale, defendants and all persons claiming under or against them are forever barred and foreclosed of and from any and all right, title, interest, claim, or demand of any kind or nature whatsoever, or equity of redemption, in and to the subject property and the purchaser of the sale shall be let into immediate possession of such property.

9. After confirmation of the sale, the Marshal shall retain his fees and costs incurred in connection with the sale and distribute the proceeds of the sale as far as there are sufficient monies by paying first, the Clerk for the costs of this action and, second, the total sum found to be due to plaintiff, plus interest on such sum from the date of this Final Judgment to the date of the issuance of the Marshal's deed at the rate of 12% per annum.

10. If the total sum realized in the sale exceeds the total of the sums found to be due and owing under the defaulted loans and as attorneys' fees, the excess shall be paid into the registry of the Court to be disbursed as the Court shall thereafter direct.

DONE AND ORDERED.