IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1335

_____

FEDERAL DEPOSIT INSURANCE CORPORATION,

Plaintiff-Appellee
Cross-Appellant,

versus

REX P. FULLER, Individually and as
Independent Executor of the Estate
of R.P. Fuller, deceased,

Defendant-Appellant
Cross-Appellee,

and

ANN FULLER CLAYTON, f/k/a Ann Fuller
Lydick, and JANE FULLER JACKSON, d/b/a
Lydick-Jackson Joint Venture,

Defendants
Cross -
Appellees.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

(June 21, 1993)

Before WISDOM[*], GARWOOD, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

I.

The FDIC sued on a promissory note executed by Rex P. Fuller

on behalf of himself, his sisters, Ann Fuller Lydick Clayton and

_____

[*]Because of illness, Judge John Minor Wisdom was not present
at the oral argument of this case; however, having had available
the tape of oral argument, he participated in this decision.

Jane Fuller Jackson, and his father, R.P. Fuller in favor of Continental Illinois National Bank and Trust Company of Chicago in December 1984.  The makers defaulted in May 1986 and Continental accelerated the note and sued in September 1986.  Fuller[1] counterclaimed for fraud, racketeering, and civil conspiracy.

In April 1987, Continental assigned Fuller's note to the FDIC in its corporate capacity.  The FDIC and the Fullers then began settlement negotiations agreeing to temporarily dismiss the suit during their effort.  When no settlement was reached, the FDIC sued on the note in September 1990.

Fuller answered the FDIC's claim in part by a plea of laches. At trial, the court rejected the defense of laches holding that laches cannot be asserted against the FDIC in its corporate capacity.  The jury returned a verdict in favor of the FDIC for the principal amount of $4,500,096.50.  The court awarded the FDIC costs, post-judgment interest, and counsel fees, but denied prejudgment interest.

## II.

Fuller urges that the court erred in rejecting laches as a defense and asks for a trial of the issue.  The FDIC cross-appeals the denial of prejudgment interest.  We do not reach the broad contention that laches is never a defense to a claim by the FDIC in its corporate capacity.  We conclude that laches is, in any event, not a defense to the legal claim against Fuller and that the district court did not err in not awarding prejudgment interest.

---

[1]We throughout refer to the makers as "Fuller."

2

The FDIC argues that laches is not a defense to its legal claim, a suit on the note for debt. The FDIC points out that it filed suit within the limitations period and that it is equally clear that the FDIC asserted a legal and not an equitable claim.

The FDIC relies on Clark v. Amoco Production Co., 794 F.2d 967 (5th Cir. 1986), in which we held that under Texas law, laches is usually not a defense unless the claim is "of an essentially equitable character." Judge Rubin articulated the consistent principle behind laches as "equitable remedies are not available if granting the remedy would be inequitable to the defendant because of the plaintiff's long delay." Environmental Defense Fund, Inc. v. Alexander, 614 F.2d 474, 478 (5th Cir.), cert. denied, 449 U.S. 919 (1980). This principle illustrates the equitable nature of the laches defense, implying its inapplicability to claims for legal remedies. In Franks v. Bowman Transp. Co., 495 F.2d 398, 406 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747 (1976), we stated that "[i]n an equitable action, equitable defenses may be raised, and these include the doctrine of laches." The converse would be that in legal actions, laches is not available. See Morgan v. Koch, 419 F.2d 993, 996 (7th Cir. 1969).

This would end the matter but, we are told, there is an exception to this general rule. In "extraordinary circumstances," laches may be asserted before limitations has run. Of course, this sidesteps the issue of whether laches can bar a legal claim filed within the statute of limitations and the only relevant Fifth Circuit precedent we are pointed to involved claims that the Court

3

characterized as "essentially equitable" in nature.  See, e.g., Franks, 495 F.2d at 406.  The appellants do gain some support from S.E.R., Jobs For Progress, Inc. v. United States, 759 F.2d 1, 8 (Fed. Cir. 1985), where the Court stated that laches is not inapplicable in contract cases per se.  Instead, the Federal Circuit stated that laches cannot be asserted against legal claims where a statute of limitations is available to preclude recovery on stale claims "unless the offended party has been unmistakably prejudiced by the delay."  Id. at 9.  We question this "exception" because it does not admit principled limits but we need not cross this bridge because even if we assume laches is available in "extraordinary" circumstances or where the defendant is "unmistakably prejudiced," nothing supports its application here.

Fuller argues that the FDIC's delay of two years caused the loss of witnesses and access to evidence that would have supported third party claims of fraud, racketeering, and civil conspiracy against Continental.  In the dismissal agreement, Fuller agreed not to refile claims against Continental until or unless the FDIC refiled suit.  The decision not to pursue discovery regarding these claims was unilateral.

Fuller alleges that a key witness died during negotiations, another witness could no longer recollect the relevant events and involved employees of Continental left the company's employment and cannot be located.  Yet Fuller admits that the death was one month after the original case was dismissed, a loss hardly the result of the delay.  In addition, he does not allege that he had been aware

4

of the whereabouts of the missing witnesses when the case was dismissed and later lost track of them. There is no contention that the witness with the failed memory had any recollection of the events when the case was originally dismissed. Two years does not account for the witness's inability to recall events from ten years ago. Those events were eight years old when Fuller first filed his counterclaims.

The FDIC denies that any delay caused the loss of any claims. In Matter of Bohart, 743 F.2d 313 (5th Cir. 1984), we held that loss of a claim during a delay is not enough. Rather, the delay must cause the loss. Id. at 326-27. Fuller was free to pursue discovery during negotiations. In addition, there is no suggestion that he would have had access to the "lost" evidence before the delay.

III.

At trial, FDIC employee Winget, the only witness to testify regarding the amount due on the note, testified that the principal amount due was $4,500,096.50. He also testified that the accrued interest as of January 3, 1992, was $2,239,273.62. Winget did not personally calculate the interest due.

The promissory note provided for payment of interest by Fuller as follows:

> . . plus interest (on the basis of a year consisting of 365, or when appropriate 366, days) from the date hereof until maturity at a fluctuating rate per annum equal to the sum of the prime interest rate of the Bank [Continental] (being at any time the rate per annum then most recently announced by the Bank at Chicago, Illinois as its prime rate) in effect from time to time, plus one percent (1%), such rate to change concurrently with each change in said prime rate as publicly

5

announced by the Bank, on the principal balance hereof remaining from time to time unpaid, payable monthly on the first day of each month hereafter, commencing January 1, 1985, and at maturity, and with interest after maturity (whether by acceleration or otherwise) on said principal balance until paid at a rate per annum which is in effect from time to time (but not less than the prime rate in effect at maturity), plus two percent (2%), all such payments of principal and interest to be made in lawful money of the United States in immediately available funds.

There was no evidence regarding Continental's prime rate or dates on which it changed.

In closing argument, the FDIC requested a total award, including principal and interest, in excess of $6.7 million. The jury awarded $4,500,096.50. The district court denied the FDIC's motion to amend the judgment to include an award for the alleged prejudgment interest. We review the district court's denial of this motion for abuse of discretion. Midland West Corp. v. FDIC, 911 F.2d 1141, 1145 (5th Cir. 1990).

Fuller vigorously contested the FDIC's proof of the amount due. In particular, he argued to the jury that Winget had no personal knowledge regarding the facts and calculations leading to his interest amount testimony. Fuller asked the jury to award no money where the FDIC failed to proof the amount due with a preponderance of the evidence. The most likely inference from the jury's award is that it rejected the interest testimony. We are not persuaded that the district court abused its discretion by declining to amend the judgment.

AFFIRMED.