**UNITED STATES, Plaintiff,**

v.

**The HANOVER INSURANCE COMPANY, Defendant.**

Court No. 92–11–00733.
Slip Op. No. 94–164.

United States Court of
International Trade.

Oct. 17, 1994.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ.Div., U.S. Dept. of Justice (A. David Lafer, Reviewer, Rhonda K. Schnare), Darlene Stephens, United States Customs Service, Washington, DC, of counsel, for plaintiff.

Sandler, Travis & Rosenberg, P.A., Gilbert Lee Sandler, Ronald W. Gerdes, and Arthur K. Purcell, Miami, FL, for defendant.

Wendy Jo Lewis, Senior Staff Atty., New York City, for amicus curiae American Ass'n of Exporters and Importers.

### MEMORANDUM OPINION

DiCARLO, Chief Judge.

Defendant, Hanover Insurance Company, moves for an order finding the United States Customs Service in contempt of court and for other related relief. Hanover asserts that Customs contravened this court's earlier decision in this action when it threatened to impose administrative sanctions if Hanover did not pay the claim this court previously held as time-barred.

The threatened administrative sanctions include: (1) issuance of instructions directing all District Directors and Regional Directors not to accept any merchandise covered under bonds written by Hanover until Hanover

pays the time-barred debt; and (2) referring the matter to the Treasury Department to remove Hanover from the list of approved sureties.

■ The United States originally commenced this action against Hanover to recover unpaid antidumping duties and interest. Hanover moved to dismiss on the ground that the action was barred by the statute of limitations, 28 U.S.C. § 2415(a) (1988). The court granted Hanover's motion and dismissed the action. *United States v. Hanover Ins. Co.*, 17 CIT ——, 1993 WL 273662, Slip Op. 93–127 (July 9, 1993). Thereafter, when Hanover refused Customs' continued demands for payment of the time-barred claim, Customs attempted to enforce its claim by threatening to impose the administrative sanctions described above unless Hanover paid the debt.

The issue presented is whether the statute of limitations prevents Customs from using administrative sanctions to enforce an otherwise time-barred claim. The court holds that, as the statute of limitations has been held to bar Customs from court enforcement of its claim, Customs may not use administrative sanctions as a means of enforcement to circumvent that prohibition, absent a specific basis in law for such means. The required showing has not been made.

### *Discussion*

*1. Jurisdiction*

■ The court retains jurisdiction over this action to decide this motion. This court possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585 (1988). One of the powers conferred by statute upon the district courts is that contained in 28 U.S.C. § 1367(a) (Supp. IV 1992). Section 1367 provides that, in any civil action where district courts have original jurisdiction, such courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). The court may exercise supplemental jurisdiction even if the court has dismissed all claims over which it had original

jurisdiction. 28 U.S.C. § 1367(c)(3). In addition, absent a stay pending an appeal, a court retains jurisdiction to supervise its judgments and enforce its orders. 7A Federal Procedure, L.Ed. § 17:3 (1992). Finally, a court always has jurisdiction to determine the effect of, and to enforce, its own judgments. *Beers v. Haughton,* 34 U.S. (9 Pet.) 329, 359, 9 L.Ed. 145 (1835); *Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1868).

*2. Operation of the Statute of Limitations*

In opposing this motion, the Department of Justice maintains that Customs has not taken any action contrary to this court's earlier decision. It argues that the decision only bars Customs from commencing another lawsuit to collect the time-barred claim. According to Justice, because Customs is attempting to enforce its claim extra-judicially, this court's earlier decision does not apply.

For Justice to prevail with this argument, the court must find that, in enacting section 2415, Congress intended to do no more than prohibit the commencement of court actions to enforce agency claims beyond the statutory six-year period. As a corollary to that finding, the court also must find that Congress intended agencies to be free to assert their claims at any time and by any means other than court actions, unencumbered by the period of limitation imposed by section 2415(a).

To support its position, Justice argues "[t]he plain language of section 2415(a) establishes that the limitations period was intended to apply to judicial actions and not administrative proceedings." (Pl.'s Resp. at 8).

■ Where the language of a statute is clear, its plain meaning governs interpretation of the statute. Absent a clearly expressed legislative intention to the contrary, that language must be regarded as conclusive. However, in ascertaining the plain meaning of a particular statutory provision, the court must consider the language and structure of the statute as a whole. *National R.R. Passenger Corp. v. Boston & Me. Corp.,* —— U.S. ——, ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) (citations omit-

ted). In addition, as stated by the Federal Circuit, where congressional intent would be thwarted absent reference to legislative history, it is permissible to look beyond the specific language used to ascertain the statute's scheme and purpose. *See, M.A. Mortenson Co. v. United States,* 11 Fed.Cir. (T) ——, ——, 996 F.2d 1177, 1181 (1993)

A specific and conspicuous congressional purpose in enacting section 2415 was to compel government agencies to assert their claims promptly. The antidote for delay was to prohibit enforcement of claims by agencies beyond the statutory period. This purpose is evident in the structure of section 2415.

Section 2415(a), title 28, United States Code, provides, in pertinent part:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

28 U.S.C. 2415(a).

To determine the plain meaning of section 2415, subsection (a) must be read and construed in context with the other subsections of section 2415. In subsections (f) and (i) of section 2415, Congress provided for narrowly drafted exceptions to the subsection (a) statutory time-bar:

(f) The provisions of this section shall not prevent the assertion, in any action against the United States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof, against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. A claim of the United States or an officer or agency thereof that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim may, if time barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery.

....

(i) The provisions of this section shall not prevent the United States or an officer or agency thereof from collecting any claim of the United States by means of administrative offset, in accordance with section 3716 of title 31.

28 U.S.C. 2415(f), (i).

A review of the structure of section 2415 clearly demonstrates Congress intended to encompass more than court actions under section 2415(a). Rather, Congress intended to prohibit the assertion of claims by any means, except for certain specified exceptions provided for in statutory or decisional authority. For instance, in subsection (a) of section 2415, Congress excluded from the mandates of the six-year limitations period other statutes of limitation that may be of specialized nature. In subsection (f) of section 2415, Congress included two carefully drafted exceptions to the time-bar, authorizing the United States to defensively assert time-barred claims by way of offset or counterclaim.

Subsection (i) provides further indication that the statutory language of section 2415(a) must be construed contrary to the interpretation urged by Justice. The addition of subsection (i) illustrates that Congress and Justice believed in 1982 that Congress did more than close the courtroom door in 1966 when it prohibited the United States from commencing court actions. At that time, Justice took the position that the statute of limitations prohibited an agency from using means not specifically authorized by the statute to enforce a time-barred claim. Based on this position, Congress added another exception to the statutory time-bar by enacting subsection (i) to section 2415. *See* S.Rep. No. 378, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 3377.

As explained in the Committee Report:

[Subsection (i)] allows collection of delinquent debts owed the government by administrative offset beyond the six-year statute of limitations.

Many overdue debts owed the government are now or will be six years old

before offset becomes possible. *The Justice Department has determined that the six-year statute of limitations prevents the government from collecting debts over six years old by means of offset,* thus, the government will be unable to collect a just debt from many debtors because the statute of limitations has run out. . . .

This revision of Section 2415 would allow administrative offset of delinquent debts owed the government against future payments benefits, or non-tax refunds due the delinquent debtor beyond the six-year statute of limitations.

S.Rep. No. 378 at 16–17; 1982 U.S.C.C.A.N. at 3392–93 (emphasis added).

In originally enacting section 2415, Congress' purpose was to provide an effective solution to problems brought to the attention of Congress by Justice in 1966. In requesting Congress to enact a statute of limitations against collection of government claims, the Attorney General of the United States presented a number of public policy reasons why such time limitations should be imposed:

More time limitations appear desirable for a number of reasons. Application of statutes of limitation in tort and contract actions would make the position of the Government more nearly equal to that of private litigants. A corollary to this objective is the desirability of encouraging trials at a sufficiently early time so that necessary witnesses and documents are available and memories are still fresh.

Another reason for proposing limitations is to reduce the costs of keeping records and detecting and collecting on Government claims—costs that after a period of years may exceed any return by way of actual collections. *Further consequences to be expected from this measure are the encouragement of the agencies to refer their claims promptly to the Department of Justice for collection; the avoidance of judicial hostility to old claims asserted by the Government; and the minimizing of collection problems arising with respect to debtors who have died, disappeared, or gone bankrupt.*

The proposal would impose a six-year limitation on the assertion of government claims for money arising out of an express or implied contract or a quasi-contract.

S.Rep. No. 1328, 89th Cong.2d Sess. 12 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502, 2513 (emphasis added).

Responding to that request, the Senate Judiciary Committee stated that the proposed law was intended in part to compel government agencies to become more efficient and effective in asserting their claims:

Statutes of limitation have the salutary effect of requiring litigants to institute suits within a reasonable time of the incident or situation upon which the action is based. In this way the issues presented at the trial can be decided at a time when the necessary witnesses, documents, and other evidence are still available. At the same time, the witnesses are better able to testify concerning the facts involved for their memories have not been dimmed by the passage of time. The committee feels that the prompt resolution of the matters covered by the bill is necessary to an orderly and fair administration of justice. . . . *Even if the passage of time does not prejudice the effective presentation of a claim, the mere preservation of records on the assumption that they will be required to substantiate a possible claim or an existing claim increases the cost of keeping records. As time passes the collection problems invariably increase. The Government has difficulty in even finding the individuals against whom it may have a claim for they may have died or simply disappeared.* These problems have been brought to the attention of the committee previously in connection with other legislation. This bill provides the means to resolve these difficulties.

S.Rep. No. 1328 at 2; 1966 U.S.C.C.A.N. at 2503–2504 (emphasis added).

Referring to the legislative history of section 2415, the Federal Circuit, quoting the Committee reports, noted:

The emphasis on fairness . . . is a very important consideration and the principal basis for the bill.

. . . .

[If section 2415 passes, t]he Government will be barred from asserting old and stale claims in the courts *and the necessity for the early assertion of claims will require increased efficiency in Government claims proceedings.*

*S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 7 (Fed.Cir.1985) (emphasis added) (citations omitted). Based upon its consideration of the enactment history, the Federal Circuit went on to conclude:

Thus, the clear purpose of Congress in passing [section 2415] was to promote fairness to parties defending against stale Government contract and tort claims notwithstanding whatever prejudice might accrue thereby to the Government as a result of the negligence of its officers.

*Id.* at 8 (footnote omitted).

Justice now argues, some thirty years later, that when Congress enacted section 2415, it intended to preclude government agencies only from commencing court actions to enforce their claims, but not from enforcing such stale claims through extra-judicial means. Therefore, Justice asserts, Customs is not barred from pursuing its own administrative sanctions, free of the statutory time limitations, if Hanover refuses to pay the time-barred claim.

If this court accepts this interpretation of section 2415, the effect would be tantamount to judicially inserting another exception to the six-year period of limitation. Such a judicially-created exception could, in instances such as this, vitiate the statute of limitations by allowing any agency with the means to proceed extra-judicially to enforce its claim beyond the statutory period.

■ When enacting statutes of limitation, legislatures, of course, can, and frequently do, provide for specified exceptions to statutory prohibitions. These exceptions are the sole prerogative of the legislature, and as Chief Justice John Marshall held in *McIver v. Ragan,* 15 U.S. (2 Wheat.) 25, 4 L.Ed. 175 (1817), the courts may not add to them. Responding to the argument that the statute of limitations imposed difficulties upon the plaintiffs' ability to enforce their claim, Chief Justice Marshall said:

If this difficulty be produced by the legislative power, the same power might provide a remedy; but courts cannot, on that account, insert in the statute of limitations an exception which the statute does not contain. It has never been determined that the impossibility of bringing a case to a successful issue, from causes of uncertain duration, though created by the legislature, shall take such case out of the operation of the act of limitations unless the legislature shall so declare its will.

15 U.S. (2 Wheat.) at 30.

The Supreme Court later noted:

It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable. *We should give them effect in accordance with what we can ascertain the legislative intent to have been.* We doubt that here we have misconceived the intent of Congress.... But if we have, or even if we have not but Congress desires a different result, it may exercise its prerogative to amend the statute so as to effect its legislative will.

*United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 361, 62 L.Ed.2d 259 (1979) (emphasis added).

The mere fact that statutes of limitation may impose some difficulties for recovery of claims is an insufficient basis to ignore them. As the Supreme Court observed, "[statutes of limitation] are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). Necessity and convenience rather than logic provides the statutes with their justification, for "[t]hey are practical and pragmatic devices." *Id.* It is legislation that has conceived them; by this fact they are subject to a large degree of legislative control. *Id.*

Deference to legislative control over section 2415 was shown in a recent decision of the Federal Circuit. The Court of Appeals,

in *United States v. Commodities Export Co.,* 10 Fed.Cir. (T) ——, 972 F.2d 1266 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993), held that Customs was time-barred by section 2415(a) from enforcing its claims. In *Commodities Export,* Customs attempted to postpone the time when its right of action accrued. After referring to and relying upon legislative history, the court refused to permit Customs to circumvent the time limitation imposed by section 2415(a) through its internal administrative procedures. *Id.* The Federal Circuit, alluding to section 2415 as a statute of repose, concluded that Customs' procedures cannot unilaterally change the defendant's right to repose after the statutory six-year period. 10 Fed.Cir. (T) at ——, 972 F.2d at 1271; *see also United States v. Cocoa Berkau, Inc.,* 11 Fed.Cir. (T) ——, 990 F.2d 610 (1993).

Justice cites several decisions to support its contention that section 2415 does not apply to administrative remedies. All are inapposite.

In *Gerrard v. United States Office of Education,* 656 F.Supp. 570 (N.D.Cal.1987), a non-binding opinion on this court, the district court noted "[t]he language of § 2415(a) supports the government's position that the section does not apply to tax refund *offsets.* The use of the phrase 'action for money damages' indicates that the bar applies to judicial, not administrative, proceedings, as does the requirement that the government 'file a complaint' within six years." 656 F.Supp. at 573 (emphasis added).

This court distinguishes *Gerrard* from the present case. *Gerrard* dealt with an administrative offset of a time-barred claim for a delinquent educational loan against plaintiff's tax refund. The holding in *Gerrard,* however, did not encompass whether the statutory bar in section 2415(a) permitted the government from enforcing a time-barred claim through extrajudicial means when offset is unavailable.

The holding must be interpreted within the context of the opinion. The court in *Gerrard*

permitted the tax refund offset based on explicit statutory authorization under 26 U.S.C. § 6402(d) (1988), and 31 U.S.C. § 3720A(a) (1988). This offset procedure had its own statutory ten-year period of limitation. Thus, the separate statute provided the government a lawful means to collect the debt beyond the six-year period in section 2415(a).

The Court of Appeals for the Fifth Circuit supports this interpretation. That court declared "*Gerrard* stand[s] for nothing more than the truism that the ten-year offset procedure remains available to the Secretary [of Education], even though the six-year statute of limitations [section 2415] for filing suits for money judgments may have expired, because that debt is still 'legally enforceable' under the [treasury regulation permitting offset]." *Grider v. Cavazos,* 911 F.2d 1158, 1163–64 (5th Cir.1990).

Justice also refers this court to *Doko Farms v. United States,* 956 F.2d 1136 (Fed. Cir.1992).[1] That case similarly distinguishable. In *Doko Farms,* the Federal Circuit held that the statutory exception for offsets in 15 U.S.C. § 714b(c) (1988) permitted the government to administratively offset the improper subsidy overpayments against subsidy payments due for subsequent years, despite the expiration of the statute of limitations in section 2415(a). The court also noted that one of the other provisions under 31 U.S.C. § 3716(a) (1988) authorized agency heads to collect debts through administrative offset in accordance with agency regulations. Although the court recognized that decisional authority supported the government's ability to defend against a suit through offset, in *Doko Farms,* as in *Gerrard,* explicit statutory authorization provided the basis for the offset.

The Federal Circuit explained:

> *The governing statutes and regulations authorized, if not required, the withholding offset the government administratively made* and justified the government's reliance on that offset to oppose Doko's at-

---

1. The Justice Department's brief cites *"Curry v. United States,* 956 F.2d 1136 (Fed.Cir.1992)."* The decision reported at that volume and page is

*Doko Farms.* This court assumes that the Department of Justice intended to cite to this case.

tempt to recover the withholding through its Claims Court suit. [Moreover,] "[t]he government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' "

956 F.2d at 1142 (emphasis added) (citations omitted). Therefore, *Doko Farms*, which simply allowed the government to offset, does not support the position of Justice.

Justice also relies upon *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1 (Fed.Cir.1985). The dispute in *S.E.R.* arose from a contractor's administrative appeal against the government for the amount of certain disallowed costs. Because it was not an action for money damages brought by the United States, the Federal Circuit held that section 2415 was inapplicable to the government's claim for recoupment of the prepaid, disallowed costs. Moreover, the government's claim for recoupment of the overpayment was made pursuant to specific statutory procedures authorized by the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1988). That Act "exclusively governs Government contracts and Government contract disputes . . . ., clearly and comprehensively defin[ing] the procedures for all contractual disputes between the United States and private contractors." *Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed.Cir.1993) (citations omitted). Accordingly, *S.E.R.* provides no support for Justice's assertion.

Finally, Justice refers the court to language quoted in *Union Pacific Railroad Co. v. United States*, 147 F.Supp. 483, 485, 137 Ct.Cl. 267, *cert. denied*, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957).[2] As with *Gerrard*, this language must be interpreted in context. The holding in *Union Pacific* reconciled two competing statutes by concluding that the statutory provision for administrative settlements established by section 322 of the Transportation Act of 1940 was not subject to the six-year statute of limitations fixed by section 4(c) of the Charter Act (a period of

limitations distinct from section 2415). Thus, the separate statute for administrative settlements eliminated the question of whether the six-year statute of limitations applied.

These cases do not support Justice's interpretation of section 2415, nor is its interpretation supported by an analysis of the statute itself or resort to its legislative history. Customs' construction of section 2415 undermines the goals Congress intended to achieve by enacting the statute. Customs would not be encouraged to refer its claims promptly to Justice for collection. The agency could, in those instances where internal coercive measures are available, have an unfair advantage over similarly-situated individual litigants because it could enforce otherwise stale claims. The compulsion of a time bar to encourage Customs to become more effective and efficient in asserting its claims would be removed. In fact, Customs could be in a better position in some disputes if it allows the six-year period to expire, and then threatens to impose sanctions. The right of the opposing party to assert any defenses available in a court of law would be no longer present.

This court refuses to close its eyes to the realities of what Customs is trying to do. For reasons of its own, or as a consequence of its own neglect, Customs did not commence this action within the six-year statutory period. Accordingly, judgment was entered against Customs. Customs cannot now subvert this court's decision or evade the statutory time-bar by simply labeling its belated collection attempt an "administrative proceeding."

In this case, the post-judgment coercive method of claim enforcement attempted by Customs is particularly offensive to the public policy goals of section 2415(a). After unsuccessfully litigating the issue of whether its claim was time-barred, Customs, nonetheless, is attempting to collect its stale claim by bludgeoning Hanover into payment. It does so under the threat of revoking Hanover's ability to conduct surety business with Customs bonds in the future. The alternatives

---

**2.** The Plaintiff's brief cites to *South Corp. v. United States*, 1 Fed.Cir. (T) 1, 690 F.2d 1368 (1982). (Pl.'s Resp. at 8.) The quoted language is not found in this decision. This court assumes the

Department of Justice intended to cite *Union Pacific Railroad Co. v. United States*, 147 F.Supp. 483, 137 Ct.Cl. 267, *cert. denied*, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957).

presented to Hanover by Customs present no real choice: pay the time-barred debt or lose the right to do future business with Customs.

■ Customs cannot be permitted to ignore the statute of limitations, and this court's earlier decision in this action, by imposing administrative sanctions which are neither within the exceptions provided for in section 2415 nor based upon any other statutory or decisional authority.[3]

### 3. Contempt of Court

■ Having determined that the attempt by Customs to collect the time-barred debt is contrary to this court's earlier decision, the court must next determine whether the threatened actions are contumacious of this court's decision. Contempt of court may be defined as a willful act "calculated to embarrass, hinder, or obstruct [the] court in [the] administration of justice...." Black's Law Dictionary 288 (5th ed. 1979).

Hanover argues that Customs' actions constitute a willful attempt to obstruct the court in the administration of justice, and therefore are contumacious of this court's prior decision. It may, however, be reasonable to believe Customs saw the decision as unambiguous and based its actions on the belief that section 2415(a) did not preclude it from using sanctions to collect the debt. Therefore, this court refrains from characterizing Custom's conduct as a willful obstruction of justice.

### Conclusion

The court holds that section 2415 precludes Custom's use of administrative sanctions to enforce a claim held to be time-barred by this court. However, the court does not find the requisite willful disobedience of this court's decision necessary to hold Customs in contempt of court. Accordingly, Defendant's motion for an order adjudicating plaintiff in contempt of court is denied. The parties are directed to settle an order that will ensure compliance with the terms of this decision and dispose of the other related

issues presented by the motions. If the parties cannot agree upon an order, each party shall submit its own proposed order. The settled order, or proposed orders, shall be submitted within 30 days from the date of this opinion.

---

3. This is not to say a statute of limitations should be construed to abrogate or restrict the government's common law rights, such as contractual

offset, without evident statutory language or enactment history to the contrary. *Cecile Indus.,* 995 F.2d at 1052.