The UNITED STATES, Plaintiff–Appellant,

v.

The HANOVER INSURANCE CO., Defendant/Cross–Appellant.

Nos. 95–1192, 95–1215.

United States Court of Appeals, Federal Circuit.

May 1, 1996.

Rhonda K. Schnare, Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for plaintiff-appellant. With him on the brief was Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director.

Ronald W. Gerdes, Sandler, Travis & Rosenberg, P.A., Miami, Florida, argued for defendant/cross-appellant. With him on the brief were Gilbert Lee Sandler and Arthur K. Purcell.

Wayne Jarvis, Michael G. Hodes and James L. Sawyer, Hodes & Pilon, Chicago, Illinois, were on the brief for Amicus Curiae, Intercargo Insurance Company.

Before RICH, MAYER, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge MAYER. Dissenting opinion filed by Circuit Judge BRYSON.

MAYER, Circuit Judge.

The United States appeals from a judgment of the United States Court of International Trade holding that the United States Customs Service may not enforce a time-barred claim for antidumping duties by resort to administrative procedures. *United States v. Hanover Ins. Co.*, 869 F.Supp. 950 (Ct. Int'l Trade 1994). We affirm.

## Background

The facts are not in dispute. On November 10, 1992, the United States commenced an action against Hanover Insurance Company (Hanover), surety for Gambles Import Corporation, to recover unpaid antidumping duties and interest. Customs issued the original bills for these antidumping duties in 1978, some 14 years before this action was filed. Subsequent negotiations failed and the government's claim accrued in September 1986. *United States v. Hanover Ins. Co.*, 17 Ct. Int'l Trade 693 (1993). On Hanover's motion, the court dismissed the action as barred by the six year statute of limitations, 28 U.S.C. § 2415(a) (1988). *Id.*

Despite the dismissal, Customs continued to demand payment and threatened Hanover with administrative sanctions. These sanctions included directing all district and regional directors not to accept any merchandise covered by bonds underwritten by Hanover, and requesting that the Treasury Department remove Hanover from the list of approved sureties pursuant to 19 U.S.C. § 1623 (1988).[1] Customs claimed that despite the dismissal by the Court of International Trade, it had the right to refuse to do business with Hanover "unless Hanover demonstrated the existence of a significant legal justification for nonpayment" of the time-barred duties. Hanover responded to these threats citing as "legal justification" that the Court of International Trade had dismissed Customs' claims because they were barred by the statute of limitations. Customs dismissed Hanover's response as both untimely and legally insufficient.

Hanover then filed a motion for civil contempt in the prior action before the Court of International Trade arguing that the threatened administrative actions contravened the order dismissing the case pursuant to the statute of limitations. Customs responded that its actions did not violate that order because it only prevented enforcement of the debt by legal process; the order did not extinguish Customs' right to collect. The government also argued that the statute of limitations does not apply to administrative proceedings and thus did not bar administrative action against Hanover based exclusively on Customs' time-barred claim.

The Court of International Trade rejected the government's arguments. It concluded that it had "jurisdiction to determine the effect of, and to enforce its own judgments," and therefore could determine the legal effect of its prior dismissal. 869 F.Supp. at 952.[2] The court reasoned that the structure of 28 U.S.C. § 2415, and its legislative history demonstrates that Congress intended for the limitation period to apply to administrative actions. *Id.* at 953–55. It held that Customs could not circumvent the statute of limitations, and the order of dismissal, by coercing Hanover to pay through administrative processes based exclusively on Customs' time-barred claim. *Id.* at 957–58. The court accordingly enjoined Customs from further administrative attempts to collect the claim. It also denied Hanover's motion for civil contempt because Customs' action was not a willful obstruction of justice.

---

**1.** 19 U.S.C. § 1623(b) provides in part: "Whenever a bond is required or authorized by a law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, the Secretary of the Treasury may—... (2) Provide for the approval of the sureties on such bond, without regard to any general provision of law."

**2.** The Court of International Trade also cited 28 U.S.C. § 1367 (1988 & Supp. V 1993) as a basis for jurisdiction. Section 1367(a) provides a court with supplemental jurisdiction to hear "all other claims that are so related to claims in [an] action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367(c)(3) provides a district court with discretion to hear related claims even after the claim forming the basis for jurisdiction has been dismissed. We neither rely on, nor address, this asserted basis of jurisdiction.

### Discussion

We first address the jurisdiction of the Court of International Trade to entertain Hanover's motion for civil contempt, and to enjoin Customs from pursuing administrative remedies against Hanover. The government argues that the order of dismissal did not direct Customs to take, or refrain from taking, any action. Thus there was no requisite coercive order which could give rise to contempt in this case. Without contempt jurisdiction, the government argues that the court could not enjoin Customs from using administrative procedures to force Hanover to pay the time-barred debt. We disagree with the government's analysis.

■ The trial court reviewed Customs' administrative processes against Hanover in light of its previous judgment that the claim was barred by the statute of limitations. Like district courts, *see* 28 U.S.C. § 1585 (1994), the Court of International Trade has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments. The issue before the court on Hanover's motion for civil contempt was whether Customs' attempt to circumvent the limitation period by resort to administrative actions was contrary to the prior order of dismissal. Such an inquiry falls squarely within the court's inherent power to determine the effect of its prior judgments. Where a party's conduct is in violation, or evasive, of a prior judgment, the Court of

International Trade also has authority to enjoin that conduct regardless of whether the conduct amounts to civil contempt.

We turn to the effect of the statute of limitations, 28 U.S.C. § 2415,[3] on Customs' subsequent administrative attempts to collect the time-barred duties. The government claims that the statute of limitations does not apply to administrative actions taken by Customs pursuant to 19 U.S.C. § 1623, and the implementing regulation at 19 C.F.R. § 113.38, but serves only to preclude the government from collecting duties from Hanover by judicial process. As support, it cites language in section 2415(a) which expressly refers to the filing of a complaint in court and the requirement that the action be for money damages. The government then argues that "refus[ing] to do business with a surety as a result of nonpayment is not an action for money damages as contemplated by the statute of limitations." It admits that its administrative action would effectively eliminate Hanover's import surety business, but reasons that this result is "simply the consequence of the Government exercising its economic power in the marketplace for sureties, similar to the power of any private actor."

■ But the government is not simply a private actor in the marketplace of bonds on imported goods, it is a regulator of that marketplace and it has the power to keep Hanover from participating in it. The choice the government offers Hanover—pay the

---

3. The parts of 28 U.S.C. § 2415 pertinent to this case are:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: Provided, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment. . . .

. . . .

(f) The provisions of this section shall not prevent the assertion, in an action against the Unit-

ed States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. A claim of the United States or an officer or agency thereof that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim may, if time-barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery.

. . . .

(i) The provisions of this section shall not prevent the United States or an officer or agency thereof from collecting any claim of the United States by means of administrative offset, in accordance with section 3716 of title 31.

time-barred claim or be eliminated from the market—is illusory. We therefore reject Customs' appeal to treat it as any other market actor who has the right to do business with whom it pleases. As explained in the Court of International Trade's thorough opinion, for the government to prevail in its argument, the court must find that "in enacting section 2415, Congress intended to do no more than prohibit the commencement of court actions" and that "Congress intended agencies to be free to assert their claims at any time and by any means other than court actions, unencumbered by the period of limitation imposed by section 2415(a)." 869 F.Supp. at 952. Like the Court of International Trade, we do not believe this is what Congress intended.

Examination of the language and the structure of section 2415 leaves the conviction that, absent an express exception, Congress intended that agencies assert their claims within six years or lose the right to enforce them. Section 2415(a) provides, in part, that "every action for money damages brought by the United States or an officer or an agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." Subsections (f) and (i) provide two exceptions to the general rule in subsection (a). Subsection (f) allows the United States to defensively assert time-barred claims by way of offset or counterclaim. Most relevant in refuting the government's present arguments, subsection (i) states that the statute will not prevent an agency from collecting any claim of the United States by way of administrative offset. Administrative offset is not a judicial action. Thus, Congress has considered and dealt not only with judicial actions in section 2415, but with extra-judicial agency actions as well. This is confirmed by the legislative history of subsection (i). *See* 869 F.Supp. at 953–54; S.Rep. No. 378, 97th Cong., 2d Sess. 16–17 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3377, 3392–93.

Unlike the express exception for offsets, Congress did not include an exception to section 2415(a) for coercive agency actions predicated upon an otherwise time-barred claim, and we decline the government's invitation to judicially legislate one. Were coercive agency remedies available, "Customs could be in a better position in some disputes if it allows the six-year period to expire, and then threatens to impose sanctions. The right of the opposing party to assert any defenses available in a court of law would be no longer present." 869 F.Supp. at 957.

Congress enacted section 2415 "to promote fairness ... notwithstanding whatever prejudice might accrue thereby to the Government as a result of the negligence of its officers." *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 8 (Fed.Cir.1985) (citations omitted).[4] The government's interpretation would not encourage Customs to bring actions for collection of unpaid claims promptly, and it would allow Customs to collect stale claims far beyond the ability of any private marketplace actor, which is how Customs portrays itself. When claims are time barred, Customs cannot avoid the statute of limitations by threat of administrative action based exclusively on nonpayment of the time-barred claim. We therefore agree with the

---

4. The Senate Report of 28 U.S.C. § 2415 states:
   Statutes of limitation have the salutary effect of requiring litigants to institute suits within a reasonable time of the incident or situation upon which the action is based. In this way the issues presented at the trial can be decided at a time when the necessary witnesses, documents, and other evidence are still available. At the same time, the witnesses are better able to testify concerning the facts involved for their memories have not been dimmed by the passage of time. The committee feels that the prompt resolution of the matters covered by the bill is necessary to an orderly and fair administration of justice.... Even if the passage of time does not prejudice the effective presentation of a claim, the mere preservation of records on the assumption that they will be required to substantiate a possible claim or an existing claim increases the cost of keeping records. As time passes the collection problems invariably increase. The Government has difficulty in even finding the individuals against whom it may have a claim for they may have died or simply disappeared. These problems have been brought to the attention of the committee previously in connection with other legislation. This bill provides the means to resolve these difficulties.
   S. Rep. No. 1328, 89th Cong., 2d Sess. 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502, 2503–04.

Court of International Trade that Customs' actions were contrary to the order of dismissal, and we sustain the court's injunction against further coercive administrative proceedings.

■ On Hanover's cross-appeal of the denial of its motion to hold Customs in contempt of the previous order, we review the contempt order for abuse of discretion. *See MAC Corp. v. Williams Patent Crusher & Pulverizer Co.,* 767 F.2d 882, 885 (Fed.Cir. 1985) (federal district court's contempt determination narrowly reviewed for abuse of discretion). The trial court stated that even though the attempt "by Customs to collect the time-barred debt is contrary to this court's prior decision," it may have reasonably believed that the statute of limitations "did not preclude it from using sanctions to collect the debt." 869 F.Supp. at 958. The court thus did not see Customs' conduct as a willful obstruction of justice. We agree that the government has adequately presented a reasoned legal position in this matter, and detect no abuse of discretion in the court's denial of the motion.

### Conclusion

Accordingly, the judgment of the United States Court of International Trade is affirmed.

*AFFIRMED.*

BRYSON, Circuit Judge, dissenting.

I concur with respect to the contempt issue (Hanover's cross-appeal) but respectfully dissent with respect to the statute of limitations issue (the government's appeal).

The result reached by the court in this case may well be right: The government's effort to enforce a time-barred obligation by using its leverage over Hanover looks questionable and may be unlawful. But I disagree with the route the court has taken to get to that result. In my view, the statute of limitations does not bar the action the Customs Service proposes to take against Hanover. If Customs' proposed action is unlawful, it is because the Customs regulations on which the government relies do not permit it to disqualify a surety based on an outstanding, but time-barred, obligation. That issue, however, should be decided by the Court of International Trade in a challenge brought by Hanover under the Administrative Procedure Act; it is not part of the underlying enforcement action that was brought by the United States and has been dismissed.

The government sought to recover its claim against Hanover in an enforcement action, but lost on statute of limitations grounds. The government then sought to bar Hanover from serving as a surety for importers until Hanover paid the amount that had been the subject of the unsuccessful enforcement action. The court holds that the effort to disqualify Hanover as a surety is barred by the same statute of limitations that barred the government's enforcement action. That seems to me to read the statute of limitations too broadly.

The statute, 28 U.S.C. § 2415(a), establishes a six-year limitations period for "every action for money damages brought by the United States" founded upon contract, and it should be limited to that class of cases. The government's enforcement action was such an action, and section 2415(a) was therefore properly invoked to determine whether the government's enforcement action was barred. But the administrative disqualification proceeding is not an "action for money damages brought by the United States," and it is therefore not barred by section 2415(a).

The cases addressing the scope of section 2415(a) are consistent in treating it as limited to civil actions for money damages. *See S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 5 (Fed.Cir.1985) (section 2415(a) inapplicable to administrative decision that contractor owes government money); *United States v. Alvarado,* 5 F.3d 1425, 1429–30 (11th Cir.1993) (section 2415(a) inapplicable to government foreclosure action); *Westnau Land Corp. v. United States Small Business Admin.,* 1 F.3d 112 (2d Cir.1993) (same); *King v. Railroad Retirement Bd.,* 981 F.2d 365, 367 (8th Cir.1992) (section 2415(a) inapplicable to action to recover excess retirement payments); *Jones v. Cavazos,* 889 F.2d 1043, 1048 (11th Cir.1989) (section 2415(a) inapplicable to offset against tax refund); *Thomas v. Bennett,* 856 F.2d 1165,

1169 (8th Cir.1988) (same). A case closely analogous to this one is *Arch Mineral Corp. v. Babbitt,* 894 F.Supp. 974 (S.D.W.Va.1995). In that case, the court held that section 2415(a) did not bar the Interior Department from denying or refusing to renew mining permits to an operator that was delinquent in paying reclamation fees to the Department, even though the direct collection of the fees was time-barred. The court explained (894 F.Supp. at 982):

> [The Office of Surface Mining] is neither suing nor threatening to sue Arch for money damages. Rather, it is exercising its mandate, pursuant to [the pertinent statute], to determine the fitness of applicants to receive new permits. The possibility that outstanding debt, which may be uncollectible in a civil action, can serve as the basis for a permit-block does not conflict with the purpose of the statute of limitations because the statute of limitations cuts off the remedy of collection only, without extinguishing the debt itself.

The theme of all the above-cited cases is that section 2415(a) does not apply to setoffs or other administrative actions; substantive and procedural limitations on proceedings other than "actions for money damages" must be found elsewhere.

To be sure, the majority opinion makes a telling point in citing section 2415(i), the subsection that excludes administrative offsets from the operation of section 2415. If Congress had viewed section 2415(a) as limited to actions for money damages, the argument goes, it would not have found it necessary to exclude administrative offsets from the operation of the statute. In my view, however, Congress's enactment of section 2415(i) is best understood as a clarification of the limited scope of section 2415(a), to ensure that section 2415 would not be applied to administrative offsets.

The legislative history of the 1982 amendment that added section 2415(i) provides support for that interpretation. Before 1982, the Justice Department had concluded that, absent an amendment, section 2415 could be invoked to prevent the administrative offset of debts more than six years old. *See* S.Rep. No. 378, 97th Cong., 2d Sess. 16–

17 (1982). The Comptroller General took the opposite position, arguing that section 2415 had no application to the administrative offset of debts. *See Debt Collection Act of 1981: Hearings on S. 1249 before the S. Comm. on Governmental Affairs,* 97th Cong., 1st Sess. 83 (1981). Noting the contrary position taken by the Justice Department, the Comptroller General recommended enacting subsection (i) "as a means of resolving the differences between us." *Id.* By adopting section 2415(i), Congress thus did not have to decide whether the Department of Justice or the Comptroller General had the better of the argument as to the proper construction of the pre–1982 version of section 2415.

In light of that background, the enactment of subsection (i) cannot be invoked to support the inference that Congress regarded section 2415(a) as extending to administrative actions. In any event, any such inference that could be drawn from the enactment of subsection (i) is not strong enough to overcome the clear language of section 2415(a). Particularly in light of the principle that statutes of limitations running against the sovereign are to be strictly construed, *see E.I. Dupont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924), the apparent superfluity of section 2415(i) does not justify reading section 2415(a) to apply to cases that fall outside its explicit reach. I therefore disagree with the court's conclusion that the government's proposed administrative proceeding against Hanover is barred by section 2415(a).

That is not to say that the government should prevail on the merits of the underlying dispute. The governing regulations provide that "[n]o person shall be accepted as surety on a Customs bond while in default as principal on any other Customs bond." 19 C.F.R. § 113.38(a). It is at least open to question whether a surety that has obtained a judgment in its favor on a bond, even on statute of limitations grounds, can be regarded as "in default" on that bond. The regulations further state that the surety must be given the opportunity to "provide justification for the failure to pay, or demonstrate the existence of a significant legal issue justi-

fying further delay in payment." *Id.* § 113.38(c)(4). That provision may suggest that upon presenting a "justification for the failure to pay" in the form of a judgment that no debt is owing, the company may not be barred from serving as a surety. Similarly, the regulations provide that a district director or regional commissioner can recommend that a surety company be removed from the Treasury Department's approved list of sureties if the surety "has neglected or refused to pay a valid demand made on the surety company's bond or otherwise has failed to honor an obligation on that bond." *Id.* § 113.39. Once again, however, that regulation raises the question whether a surety's refusal to pay a bond obligation that has been held unenforceable constitutes a refusal to pay "a valid demand" or the "failure to honor an obligation on that bond." In my view, those are decisions that turn not on the language of section 2415, but on the meaning of the regulations and the nature of the surety's obligations under its bond. Those issues should be addressed by the Court of International Trade in the first instance in an action brought in that court to challenge the application of the Customs Service delinquency regulations. I would therefore reverse the judgment in favor of Hanover that was entered as an ancillary order in this governmental enforcement action.