**TRAVENOL LABORATORIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. No. 96–114.
Court No. 89–08–00469.

United States Court of
International Trade.

July 23, 1996.

8. Count Two is dismissed pursuant to the agreement of the Parties above noted.

Katten Muchin & Zavis (Mark S. Zolno and Lynn S. Baker), Chicago, IL, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (James A. Curley); Office of the Assistant Chief Counsel, U.S. Customs Service (Sheryl A. French), of counsel, Washington, DC, for defendant.

## OPINION & ORDER

AQUILINO, Judge:

The North American Free Trade Agreement Implementation Act, Pub.L. No. 103–182, 107 Stat. 2057 (Dec. 8, 1993), has spawned a number of issues of seeming first impression, including several raised now in this test case in which final judgment entered in February 1993 pursuant to the court's slip op. 93–15, 17 CIT 69, 813 F.Supp. 840,

> that each of the kidney dialysis devices at issue in the case was correctly classifiable under item 960.15 or item 870.67 of the Tariff Schedules of the United States and thus entitled to entry free of duty; and

.     .     .     .     .

ORDERED that the United States Customs Service reliquidate the entries which [we]re the basis of this case under the aforesaid TSUS items and refund to the plaintiff any duties paid, together with interest thereon as provided by law.

### I

As a test case within the meaning of CIT Rule 84 finally decided, this judgment result-

ed in reliquidation and refund not only in it[1] but also in CIT Nos. 89–09–00511, 89–10–00560, 90–03–00114, 91–01–00028, 91–11–00803, 91–12–00923, 92–02–00101, 92–05–00332, 92–07–00452, 92–09–00610, 92–11–00732 and 93–01–00008, which cases had also been brought in the name of the above-captioned plaintiff (or of Baxter Healthcare Corporation), encompassing some 688 entries of the same or similar merchandise between January 1985 'and May 1992, and which had been suspended pursuant to that rule and/or Rule 85. Stipulated judgments upon agreed statements of facts within the meaning of CIT Rule 58.1 were entered in each of those cases on or prior to December 8, 1993.

Before the court now is plaintiff's Motion to Enforce Judgment, ostensibly made pursuant to CIT Rules 7 and 60(b)(6), praying that Customs reliquidate the referenced entries "and pay additional interest on the duties already refunded, computed from the date of deposit to the date of summons of each entry", to quote from the proposed form of order accompanying it. That is, according to the motion, between January 1994 and August 1995 the Service reliquidated the entries and refunded the duties which had been deposited and also paid interest thereon from the dates of their respective court summonses. However,

Customs did not refund interest from the date of deposit as allowed by 19 U.S.C. § 1505(c), which became effective prior to the reliquidation of the entries in question[ ].

8. It is plaintiff's position that the amendment of 19 U.S.C. § 1505(c) allowing interest from the date of deposit applies to any liquidations and reliquidations made after December 8, 1993 and so applies to the reliquidations of the entries listed on Schedule A.

Plaintiff's Motion to Enforce Judgment, paras. 7, 8.

The defendant does not deny the facts which underlie this motion[2], but it denies that the above-cited NAFTA implementation act, case law or logic supports the relief requested.

## II

At the times of the entries in question, as well as of the court's slip op. 93–15, 813 F.Supp. 840, and judgment, the Tariff Act of 1930, as amended, required deposit of estimated duties per 19 U.S.C. § 1505(a) while section 1520(d) of that title ("Interest rates; calculation") provided that, upon reliquidation,

interest shall be allowed on any amount paid as increased or additional duties under section 1505(c) of this title at the annual rate established pursuant to that section and determined as of the 15th day after the date of liquidation or reliquidation. The interest shall be calculated from the date of payment to the date of (1) the refund, or (2) the filing of a summons under section 2632 of Title 28, whichever occurs first.[3]

Section 642 of the implementation act repealed this section 1520(d) and redrafted section 1505 into four lettered (a through d) subsections, including:

(c) INTEREST.— ... Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest to the

---

1. Defendant's brief, page 13, note 9 represents that four predicate entries were reliquidated on July 23, 1993, leaving only one, apparently numbered 11001068750 and upon which the plaintiff now seeks additional interest, unreliquidated until August 18, 1995. The defendant does not offer a reason for the delay.

2. *See generally* Defendant's Response to Plaintiffs' Statement of Facts.

3. The section 2632 referred to is part of the Customs Courts Act of 1980, Pub.L. No. 96–417,

94 Stat. 1727 (1980), section 301 of which, as amended, provides:

If, in a civil action in the Court of International Trade under section 515 of the Tariff Act of 1930, the plaintiff obtains monetary relief by a judgment or under a stipulation agreement, interest shall be allowed at an annual rate established under section 6621 of the Internal Revenue Code of 1954. Such interest shall be calculated from the date of the filing of the summons in such action to the date of the refund.

28 U.S.C. § 2644.

date of liquidation or reliquidation of the applicable entry or reconciliation.

Pub.L. No. 103–182, § 642(a), 107 Stat. at 2205 (1993). Ergo, plaintiff's current claim(s).

## A

■ The defendant does not contest that these claim(s) have been presented within the "reasonable time" required of a motion pursuant to CIT Rule 60(b)(6)[4] or otherwise gainsay that this court has jurisdiction to reach a decision on the merits. Indeed, there is residual authority to consider relief from the operation of a judgment within the meaning of that rule, including those stipulated upon agreed statements of facts. *E.g., United States v. The Hanover Ins. Co.,* 18 CIT 991, 869 F.Supp. 950 (1994), *aff'd,* 82 F.3d 1052 (Fed.Cir.1996); *D & M Watch Corp. v. United States,* 16 CIT 285, 795 F.Supp. 1160 (1992).

## B

On its claim(s), plaintiff's position is articulated substantially as follows: The intent of Congress in amending 19 U.S.C. § 1505 was to "provide equity in the collection and refund of duties and taxes, together with interest, by treating collections and refunds equally." H.R.Rep. 361, part I, 103d Cong., 1st Sess. 140 (1993), U.S.Code Cong. & Admin.News 1993, pp. 2552, 2691. The resultant section 642 of the NAFTA improvements act "is clear on its face and should be given its plain meaning." Plaintiff's Memorandum of Law, p. 9. The court's judgments herein and hereunder are also clear. The responsibility of Customs in regard thereto was purely ministerial; the Service was not at liberty to resolve any perceived ambiguity on its own:

> ... Customs was required to follow the law of interest in effect at the time of reliquidation. The statute clearly states

that interest accrues back to the date of deposit. There is no ambiguity, because this Court has previously decided that with respect to this exact statute, it is reliquidation which is the triggering event with respect to calculation of interest.

*Id.* at 7–8 (emphasis deleted), citing *Syva Company v. United States,* 12 CIT 199, 681 F.Supp. 885 (1988), and *Penrod Drilling Co. v. United States,* 13 CIT 1005, 727 F.Supp. 1463 (1989), *reh'g denied,* 14 CIT 281, 740 F.Supp. 858 (1990), *aff'd,* 925 F.2d 406 (Fed. Cir.1991).

■ Whatever the appeal of this advocacy on its face, it is not conclusive of the issue as joined by the defendant.[5] To begin with, the U.S. Department of the Treasury and its Customs Service are responsible for enforcement of the Tariff Act of 1930, as amended, not the courts, which cannot "supply by creative interpretation the necessary clear direction that Congress omitted." *Kalan, Inc. v. United States,* 944 F.2d 847, 850 (Fed.Cir. 1991), *cert. denied,* 503 U.S. 906, 112 S.Ct. 1263, 117 L.Ed.2d 492 (1992). Any waiver of such sovereign's immunity is to be strictly construed, and, in

> the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.

*Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986). In relying on this axiom, the court of appeals in *Kalan* concluded that the law governing Customs (prior to the NAFTA implementation act) left

> little doubt that excess estimated duties are refunded without interest. Neither section 1520(d) itself nor related sections 1505(a)–(c) clearly mandate the payment of interest on duties deposited at entry and subsequently refunded. Besides that, the

---

4. As plaintiff's papers indicate, an action was commenced on January 16, 1995 *sub nom. Baxter Healthcare Corp. v. United States,* CIT No. 95–01–00055, for judicial review of protests of denials by Customs in July 1994 of interest computed from the dates of duty deposits upon its liquidation of pre–1994 entries of merchandise during January to March of that year.

5. The written submissions on both sides are of such quality as to obviate any need to burden the parties with oral argument, and plaintiff's motion therefor will not be granted.

sole statutory provision dealing directly with the refund of excess deposits [§ 1505(a)] is silent about the addition of interest.

944 F.2d at 850.

The primary enactment waiving the government's immunity in this Court of International Trade is the Customs Courts Act of 1980, as amended, 28 U.S.C. ch. 169. And necessarily, that statute was key to the decisions the plaintiff attempts to rely on, namely, *Syva* and *Penrod Drilling, supra.* Neither advances its cause. In dismissing the former for lack of jurisdiction under 28 U.S.C. § 2637(a), the court did conclude that liquidation was "the operative event triggering the time for assessment of interest"[6], albeit on the delinquent payment of liquidated duties by the importer, but that that event occurred after 19 U.S.C. § 1505(c) had been enacted, thereby dispelling any claim of retroactive application.[7] In any event, interest owed on that payment had to have been paid before the commencement of judicial review thereof, which was found not to be the case. *See* 12 CIT at 205, 681 F.Supp. at 890. *Penrod Drilling* implicated the same requirement for court intervention—and to the same negative outcome for the plaintiff therein.

■ As indicated, and as the plaintiff here properly argues, *Syva* and *Penrod Drilling* do stand for the proposition that "liquidation is the operative event for purposes of [previous] § 1505(c)", to quote from the latter, 13 CIT at 1007, 727 F.Supp. at 1466. But this is no longer true for that section as amended by the NAFTA implementation act, deposit of estimated duties is the trigger. And it is safe to assume from the history of this case that the predicate deposits were made well before Title VI ("Customs Modernization") of that statute became effective on December 8, 1993.

Nothing in its section 692, establishing that date for that title, including section 642, *supra,* or in any other part of the omnibus implementation act states or implies legislative intent that the amendments to section 1505 apply retroactively.[8] Moreover, while the court concurs with the plaintiff that the precise language Congress has enacted "is clear on its face", those words, in particular "shall accrue", portend the future not the past. *See, e.g., United States v. Burr,* 159 U.S. 78, 87, 15 S.Ct. 1002, 1006, 40 L.Ed. 82 (1895) ("shall be levied" cannot be construed to apply to transactions completed when those statutory words became effective).

■ Thus, insofar as the implementation act is concerned, the plaintiff is indeed now praying for retroactive, judicial enforcement. Such an approach is not at all favored, however, as the Supreme Court reaffirms virtually every term. *See, e.g., Landgraf v. USI Film Products,* 511 U.S. 244, 286, 114 S.Ct. 1483, 1487, 128 L.Ed.2d 229, 266 (1994):

> ... [T]here exists a judicial presumption, of great antiquity, that a legislative enactment affecting substantive rights does not apply retroactively absent *clear statement* to the contrary.

Scalia, J., concurring (emphasis in original). A simple statement that a statute will become effective on a certain date of the kind before the Court in *Landgraf,* as well as here, "does not even arguably suggest that it has any application to conduct that occurred at an earlier date." 511 U.S. at ——, 114 S.Ct. at 1493, 128 L.Ed.2d at 247.

■ The plaintiff thus can only represent that the intent of Congress in amending 19 U.S.C. § 1505 was to provide equity in the collection and refund of duties, together with interest, by treating collections and refunds equally. While the court understands that

---

6. 12 CIT at 204, 681 F.Supp. at 890.

7. *See id.* and the Trade and Tariff Act of 1984, Pub.L. No. 98–573, § 210(a), 98 Stat. 2948, 2977 (Oct. 30, 1984).

8. On the other hand, where Congress specifically intended that a section of Title VI apply retroactively, it provided for such application via language in that section itself. *See, e.g.,* Pub.L. No. 103–182, § 632(b), 107 Stat. 2197–98 (amend- ment made by § 632(a)(6) shall apply to "claims filed or liquidated on or after January 1, 1988[ ] and ... that are unliquidated, under protest, or in litigation on the date of enactment of this Act"). *Cf.* S.Rep. 189, 103d Cong., 1st Sess. 84– 85 (1993); *F.W. Myers & Co. v. United States,* 9 CIT 64, 65–66, 607 F.Supp. 1470, 1471 (1985) ("when Congress has given retroactive impact to an amendment, it has done so with considerable clarity and specificity").

this approach was not entirely new to the Tariff Act of 1930, as amended [9], government counsel are quick to point out that, if plaintiff's position were to prevail now herein, some

> importers would be required to pay interest on underpayments of estimated duties, which would be a new liability not in existence when the estimated duties were required to be deposited [10][,]

and other

> entries made on the same date as Travenol's, but liquidated or reliquidated before December 8, 1993, would not be subject to § 1505(c), as amended, because of fortuitous circumstances, a voluntary act of Customs, a request of the importer, or the disposition of a protest or court action.[11]

Given such possibilities, even clear intent that legislation apply retroactively does not necessarily result in effectuation upon judicial review. *Cf. Plaut v. Spendthrift Farm, Inc.,* — U.S. —, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (attempt by Congress to modify retroactively final court judgments unconstitutional).

Here, the modernized equitable approach for which the NAFTA implementation act opted, on its face, took effect too late for plaintiff's entries covered by this case, which may well leave the feeling that still "[m]en must turn square corners when they deal with the government." *Rock Island A. & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *United States v. Winstar Corporation,* — U.S. —, —, 116 S.Ct. 2432, 2460, 135 L.Ed.2d 964 (1996) (Rehnquist, C.J., dissenting). Indeed, this becomes even clearer with the realization that that act, whatever its underlying legislative intent, did not broaden 28 U.S.C. § 2644, *supra.* Hence, in the absence of any showing of failure to carry out the mandate of the court's judgments under that statute, the plaintiff is not now entitled to recover any more interest thereon.

## III

■ Of course, this conclusion *nisi prius* can but need not be the final word on the claim(s) the plaintiff presses. In this respect, the defendant presents a Consent Motion for Test Case Designation, which states that there are

> other actions not involving Travenol or Baxter Laboratories that are pending before this Court but which involve the same question of law that is *sub judice* in this action. Those actions involve different plaintiffs, and a large number of entries made at various ports.

To the extent this motion reveals concern on the part of the defendant for efficient procedure, it may be well-founded. The plaintiff consents, but the court is constrained to conclude that grant of the motion is not in order.

To begin with, this has already been designated a test case, albeit assumed to have been finally resolved years ago. At the time final judgment entered herein, CIT Rule 84(b) defined this kind of case as an

> action, selected from a number of other pending actions all involving a significant issue of fact or question of law that is the same, and which is intended to proceed first to final determination to serve as a test of the right to recovery in the other actions. A test case may be so designated by order of the court upon a motion for test case designation after issue is joined.

The motion referred to is prescribed, in part, as follows by subsection (c) of Rule 84, to wit:

> A party who intends that an action be designated a test case shall ... consult with all other parties to the action in accordance with Rule 7(b), and ... serve upon the other parties, and file[ ] with the court, a motion requesting such designation. The motion for test case designation shall include ... a statement that the party intends to actively prosecute the test case once designated, and a statement that the

---

**9.** *See, e.g.,* Trade Agreements Act of 1979, Pub.L. No. 96–39, § 101, 93 Stat. 144, 188 (1979), codified as 19 U.S.C. § 1677g.

**10.** Defendant's Brief, p. 7.

**11.** *Id.* at 10, n. 7.

party has other actions proceeding before the court that involve the same significant issue of fact or question of law as is involved in the test case and that it will promptly suspend under the test case.

. . . . .

On its face, this rule does not contemplate such motions after entry of final judgment, or that they will necessarily emanate from parties defendant. In fact, the government's instant motion is one of first impression in this court's experience.

Be that as it may, if a defendant desires test-case procedure, its motion, just like that of a party plaintiff, must satisfy the requirements of the above rule, as elucidated by the Chief Judge in *Generra Sportswear, Inc. v. United States,* 16 CIT 313, 1992 WL 101027 (1992). Defendant's motion does not. It hardly addresses the concerns and considerations of the court in deciding such a motion. "Mere allegations of sameness or that ... actions are related will not suffice." 16 CIT at 315, 1992 WL 101027, citing *Air–Sea Forwarders, Inc. v. United States,* 69 Cust.Ct. 327, C.R.D. 72–24, 1972 WL 23547 (1972). That is, the motion

> should provide the court with information showing that the moving party has other pending actions, the disposition of which will be facilitated if they are suspended pending the decision in the test case. More specifically, the movant should demonstrate that the actions proposed for suspension involve:
>
> > a significant and identified issue of fact or question of law in common with the test case;
> >
> > a threshold issue, (*i.e.,* a potentially dispositive issue) in common with the test case; or
> >
> > other circumstances in common with the test case showing that a decision in the test case will facilitate the disposition of the other actions.

16 CIT at 314–15, 1992 WL 101027.

Furthermore, if the discussion in forgoing part II of this opinion does not prove to be the last of litigation over plaintiff's claim(s), methods other than test-case designation exist for continuing the orderly pursuit of jus-

tice. *See, e.g.,* orders of June 17, 1996 in *Berkshire Fashions, Inc. v. United States,* CIT No. 94–12–00799; of June 18, 1996 in *Nagase America Corp. v. United States,* CIT No. 96–03–00802; of July 10, 1996 in *Diamond's Run v. United States,* CIT No. 95–01–00101; of July 10, 1996 in *Omega Fashions v. United States,* CIT No. 95–01–00102; and of July 17, 1996 in *Fabil Manufacturing Corp. v. United States,* CIT No. 95–03–00249. *Cf. Baxter Healthcare Corp. v. United States,* 20 CIT ——, 925 F.Supp. 794 (1996).

### IV

In view of the foregoing, plaintiff's motions to enforce the judgment and for oral argument and defendant's motion for test-case designation must be, and each hereby is, denied.

So ordered.